**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Villiard Archie McCARLEY,**
**Defendant–Appellant.**

**No. 02–5545.**

United States Court of Appeals,
Sixth Circuit.

July 23, 2003.

Before KEITH, SUHRHEINRICH and CLAY, Circuit Judges.

CLAY, Circuit Judge.

Defendant Villard Archie McCarley, a Tennessee prisoner proceeding with counsel, appeals an April 16, 2002, order imposing a sentence of thirty-three months imprisonment following Defendant's guilty plea to one count of conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h). Defendant claims the court imposed an excessive sentence by overestimating Defendant's relevant conduct and therefore improperly refusing to award credit for acceptance of responsibility. For the reasons set forth below, we AFFIRM the district court.

## FACTS

On March 2, 1998, Millington, Tennessee police officers discovered several stolen all-terrain vehicles at the residence of Michael Kuykendall. Law enforcement officials obtained a search warrant and recovered additional stolen property including a Kubota L4200 cab tractor, two motorboats, and various farm implements. Officers arrested Kuykendall and he immediately began cooperating with investigators.

Kuykendall admitted participating in numerous tractor thefts and stated that Defendant purchased the vast majority of the stolen tractors. According to Kuykendall, he resold twenty stolen tractors to Defendant.

Defendant resides in Northern Alabama. Kuykendall first met Defendant at a horse sale in Scotts Hill, Tennessee. Defendant approached Kuykendall and inquired about a tractor. Kuykendall had already sold that particular tractor, but he and Defendant exchanged phone numbers. When Kuykendall subsequently obtained a stolen tractor, he called Defendant. During the telephone call, Kuykendall warned Defendant by explaining that he (Kuykendall) bought the tractor from another person and knew nothing of the tractor's origin, other than that it came from somewhere other than Defendant's vicinity. With that assurance, Defendant purchased the tractor for $6500, although it was worth approximately $65,000.

Defendant subsequently purchased nineteen more stolen tractors from Kuykendall, all at far below market value. Defendant usually bought the tractors for between $3500 and $6500, although each piece of equipment had a market value between $25,000 and $75,000. Kuykendall also explained that as the number of transactions increased, Defendant wanted more assurances that the tractors were not stolen from the area in Alabama where Defendant lived. At one point, Kuykendall sold Defendant a new Kubota tractor. To the conceal the fact that it was stolen, the Kuykendall and Defendant ran the hours meter forward on the tractor to make it appear used.

As part of his cooperation, Kuykendall took an undercover officer from Memphis, Tennessee to McCarley's residence in Alabama, where the agent purchased stolen tractors from Defendant. Law enforcement officials immediately arrested Defendant. Subsequent investigation revealed that, in total, Defendant purchased stolen tractors with a market value of $386,308.31.

## PROCEDURAL HISTORY

On April 17, 2001, the Grand Jury for the Western District of Tennessee re-

turned a twenty count indictment charging Defendant with one count of conspiracy to transport stolen vehicles across state lines in violation of 18 U.S.C. § 371, nineteen counts of interstate transportation of stolen property in violation of 18 U.S.C. § 2313, and one count of conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h). On November 21, 2001, the government dropped the first twenty counts and Defendant pleaded guilty to the final count.

The Probation Office prepared a presentence report that recommended Defendant not receive an acceptance of responsibility adjustment because Defendant refused to admit all of the relevant conduct. Specifically, Defendant denied that he knew most of the tractors were stolen; rather, he claims to have only understood the last few tractors he purchased were stolen.

On April 10, 2002, the court held an evidentiary hearing. Kuykendall testified that Defendant knew the tractors were stolen at all times. Kuykendall explained to the court how he warned Defendant that he did not know the source of the tractors, but he successfully assured Defendant that they did not come from Northern Alabama. Kuykendall also testified that he sold all of the tractors to Defendant at far below market value, and Kuykendall explained how he and Defendant changed the hours meter on the new Kubota tractor to make its resale appear less suspicious. Overall, Kuykendall testified that he had "no doubt" Defendant knew from the beginning that the tractors were stolen.

Defendant did not testify at the evidentiary hearing, although he offered three character witnesses and Defendant's counsel made an effort to impeach Kuykendall. Kuykendall acknowledged that he received a twenty-one month sentence for selling stolen tractors in exchange for the assistance he provided the government in prosecuting Defendant. Before Kuykendall accepted this plea bargain, he faced a forty-two month sentence.

The district court found Kuykendall "to be a candid witness." (J.A. at 65.) The court also noted that Defendant initially asked for assurances that the tractors did not come from Northern Alabama. Ultimately, the court concluded:

> Almost anyone would know that these tractors were being purchased for nowhere near their market price. Not even used ones would cost what these tractors cost. There was no reason based on the relationship between Mr. Kuykendall and [Defendant], to think that Mr. Kuykendall was just doing him a favor. I mean, there was nothing that would suggest that there was a reason for Mr. Kuykendall to be doing this out of a long-time friendship or something of that type. [Defendant], I certainly find that he was not some sort of expert on tractors. But he frequented places where farm equipment was sold. He had sufficient knowledge about models and what type of tractors he wanted. So there is plenty of evidence here from which one can find that the overall circumstances of the transactions were sufficient to establish knowledge on the part of [Defendant].

(J.A. at 65.) Thus, the district court denied Defendant's request for an acceptance of responsibility adjustment.

The district court determined that the base offense level under U.S.S.G. § 2S1.2 was seventeen.[1] In accordance with

---

1. To avoid possible *ex post facto* issues, the district court used the 1997 edition of the Sentencing Guidelines.

U.S.S.G. § 2S1.2(B)(1), the district court increased Defendant's sentence two levels because he knowingly deposited or withdrew funds that were proceeds of unlawful activity. Additionally, the district court enhanced Defendant's sentence one level pursuant to U.S.S.G. § 2S1.2(B)(2) because the value of the property he knew was stolen exceeded $100,000.

Defendant filed a timely appeal.

## DISCUSSION

The only issue is whether the district court properly determined the relevant conduct and thus properly denied Defendant an acceptance of responsibility reduction. We will reverse a district court's determination of the amount of conduct for which a defendant must accept responsibility if the district court has made a "clearly erroneous" decision. *United States v. Harper,* 246 F.3d 520, 525 (6th Cir.2001). A finding of fact is "clearly erroneous" when this Court has a "definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer,* 470 U.S. 564, 574, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985); *see also United States v. Latouf,* 132 F.3d 320, 331 (6th Cir.1997).

Both sides agree that if the Defendant knew all of the tractors were stolen, then Defendant's purchase of each tractor constitutes relevant conduct for which he had to accept responsibility to receive a reduced sentence. Both sides also agree that if Defendant knew all of the tractors were stolen, then the one-level enhancement was appropriate because the value of the stolen property exceeded $100,000. Defendant challenges the district court's factual finding that he knew from the outset that the tractors were stolen.

The district court had three reasons for reaching its conclusion: (1) Defendant immediately asked for assurances that Kuykendall had not located the tractors in Northern Alabama; (2) Defendant pur-

chased the tractors for grossly below market value; and (3) Kuykendall testified that Defendant knew all of the tractors were stolen, and the court found his testimony credible.

First, Defendant claims the court misunderstood Kuykendall's testimony, and Kuykendall never told Defendant that the tractors did not come from Defendant's area. During the evidentiary hearing, a prosecutor questioned Kuykendall about his initial conversation with Defendant:

PROSECUTOR: Okay. But you told him [Defendant] that the tractor wouldn't come from anywhere around where he [Defendant] lived?

KUYKENDALL: Right. I told him [Defendant] that I was getting them from another guy, and, you know, a lot of them–you know, I didn't know where he [the other guy] was getting them, but he said they were coming from around my area, kind of like.

PROSECUTOR: Okay. That they were coming from around your area?

KUYKENDALL: Right, you know.

PROSECUTOR: But you assured him [Defendant] that they wouldn't be coming from his area?

KUYKENDALL: Right. They [sic] was none coming from up there.

PROSECUTOR: And you said I don't know where they are coming from?

KUYKENDALL: Right.

(J.A. at 44.) Kuykendall was less than optimally articulate, but it still seems clear that the district court reasonably concluded based on this testimony that Kuykendall told Defendant that the tractors definitely did not come from Alabama and that they probably came from Kuykendall's area (Tennessee), although Kuykendall did not know precisely where.

Second, Defendant argues the court should not have concluded he knew the

tractors were stolen merely because he paid below-market prices. One of Defendant's character witnesses, Junior Glenn Hendrix, an experienced farmer, testified that various farming equipment is often available inexpensively because many farmers face serious financial difficulties. This argument fails because Defendant got more than a "good deal" on these tractors–he initially purchased a $65,000 tractor for $6500–an amazing 90% discount. Defendant does not contest the district court's conclusion that he had at least some knowledge about tractors. It seems very unlikely that Defendant did not recognize that the $65,000 tractor must be stolen and, more important, the district court did not "clearly err" in reaching that conclusion. *See, e.g., United States v. Jewell*, 893 F.2d 193, 194 (8th Cir.1990) ("[T]he purchase of the appliances at a ridiculously low price and the subsequent sale of the appliances at below market value is sufficient to support an inference that Jewell knew the appliances were stolen."); *United States v. Gallo*, 543 F.2d 361, 368 (D.C.Cir.1976) (holding knowledge that goods are stolen may be inferred from willingness to buy or sell at a price substantially less than market value); *Torres v. United States*, 270 F.2d 252, 259 (9th Cir.1959) (same).

Third, Defendant claims the district court should not have found Kuykendall credible when he testified that he had "no doubt" that Defendant knew every tractor was stolen. (J.A. at 49.) Defendant highlights minor inconsistencies in Kuykendall's testimony. For instance, Kuykendall originally claimed that he did not provide Defendant with bills of sale for the tractors, but later recanted that testimony. Kuykendall also testified that the first tractor he sold to Defendant was "person-to-person," but a Defense witness, Charles Greenway, said Defendant bought his first tractor by auction. (J.A. at 61–62.) The district court has the right to make credibility assessments as long as the court does not accept testimony completely without foundation. *United States v. Garcia*, 252 F.3d 838 (6th Cir.2001) (finding no clear error where the district court believed government witness rather than the defendant in a dispute over drug quantity); *United States v. Hill*, 195 F.3d 258, 264–65 (6th Cir.1999) (explaining appellate deference to credibility determinations made by the district court). These fairly trivial inconsistencies do not create such doubt in Kuykendall's testimony that we can conclude with conviction that the district court "clearly erred" in crediting Kuykendall.

Defendant argues that many of the tractors he received came with keys, which made the tractors appear less suspicious. That does not make them beyond question, however–it may be possible for a tractor thief to steal keys as well.[2] Defendant also emphasizes that Kuykendall admitted he never referred to any tractor as "hot" or "stolen." This means nothing. Discreet thieves often sell obviously stolen properly without using the lingo of the stereotypical "Law & Order" or "N.Y.P.D. Blue" villain.

Viewed overall, the court had three good reasons for finding that Defendant knew all of the tractors were stolen: Defendant paid much too little, Defendant expressed concern over whether Kuykendall located

---

**2.** Furthermore, the key argument cannot help Defendant because Defendant never identifies which tractors came with keys (for instance, whether the first tractor had keys), although he would presumably bring this information to our attention if it would aid his cause. If Defendant initially purchased a $65,000 tractor for $6500 *without keys,* that makes it even more difficult to conclude Defendant did not know the tractors were stolen from the outset.

the tractors near Defendant's residence, and the court found Kuykendall's testimony credible. Perhaps most important, we must view these three factors together. Even if we concluded that one particular consideration, viewed independently, seemed inadequate to support the district court's decision, the totality of evidence available to the factfinder makes it impossible to conclude that the district court "clearly erred."

For the aforementioned reasons, we AFFIRM the district court's sentence.