RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 20a0312p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

No. 19-5636

TYSLEN J. BAKER,

*Defendant-Appellant*.

Appeal from the United States District Court
for the Western District of Kentucky at Owensboro.
No. 4:17-cr-00007-1—Joseph H. McKinley, Jr., District Judge.

Decided and Filed: September 24, 2020

Before: SUHRHEINRICH, DONALD, and MURPHY, Circuit Judges.

_____

## COUNSEL

**ON BRIEF:** Michael T. Lee, MCCARROLL, NUNLEY, HARTZ & LEE, Owensboro,
Kentucky, for Appellant. Terry M. Cushing, UNITED STATES ATTORNEY'S OFFICE,
Louisville, Kentucky, for Appellee.

MURPHY, J., delivered the opinion of the court in which SUHRHEINRICH, J., joined.
DONALD, J. (pp. 18–26), delivered a separate dissenting opinion.

_____

## OPINION

_____

MURPHY, Circuit Judge. After learning of an outstanding arrest warrant for Tyslen
Baker, a police officer entered his residence to arrest him and spotted drugs and a firearm in a
back room. Baker moved to suppress this incriminating evidence on the ground that the police
had violated the Fourth Amendment in two ways. Baker first argued that the officer who

executed the arrest warrant subjected him to an "unreasonable" "seizure" by entering that back room without his consent.  Baker next argued that the separate officer who requested the arrest warrant from a state judge relied on an affidavit lacking "probable cause" that Baker had committed a crime.

We hold that the district court correctly denied Baker's motion to suppress this evidence.  The officer who arrested Baker acted reasonably in monitoring his movements during the arrest.  *See Washington v. Chrisman*, 455 U.S. 1, 7 (1982).  And the affidavit supporting the warrant contained enough of a connection between Baker and a crime that the officers could reasonably rely on the state judge's probable-cause finding.  *See United States v. Leon*, 468 U.S. 897, 922 (1984).  Whether or not probable cause existed, therefore, the warrant should not trigger the exclusionary rule.  *Id.*  And while *Leon*'s exception to the exclusionary rule arose in the context of a *search* warrant allegedly lacking probable cause, we think the Court would extend its basic rules to *arrest* warrants too.  *Cf. Herring v. United States*, 555 U.S. 135, 137 (2009).  We thus affirm.

I

Officer Zacharey Render worked for the police department in Madisonville, a small city in western Kentucky.  As part of his regular routine as a patrol officer, Render would review Kentucky's e-warrant system and attempt to serve outstanding arrest warrants on individuals located within Madisonville city limits.  On the evening of January 25, 2017, Render worked a night shift from 6:00 p.m. to 6:00 a.m.  Near the start of his shift, Render perused Kentucky's e-warrant system for new arrest warrants.  The system showed a new warrant to arrest "Tyslen Jamar Baker" for receiving stolen property and identified Baker's address as "302 North Kentucky" in Madisonville.

The previous day, a judge in a neighboring county had issued this warrant on the ground that Baker had received a stolen Nextbook tablet in violation of Kentucky Revised Statutes § 514.110.  The affidavit supporting this warrant read in full:

> The Affiant, Alan King (Providence Police Department 3962), states that on 4/19/2015 in Webster County, Kentucky, the above-named Defendant unlawfully: Receiving Stolen Property.  On 4/19/2015 a Nextbook tablet, and several other

items were taken from the residence at 601 St. Bernard Street in Providence, KY. The tablet turned up pawned at River City Pawn in Madisonville, KY. An interview with the subject who pawned the tablet revealed that the tablet was purchased in Madisonville, KY from a Tyslen Baker. The stolen tablet was recovered from the pawn shop in Madisonville.

When Officer Render executes a warrant listed in Kentucky's e-warrant system, he typically locates the named individual, confirms the individual's identity, takes the individual into custody, and retrieves the warrant to read to the individual. He does not review the affidavit supporting the warrant beforehand to ensure that probable cause exists for the arrest. He followed his usual practice in this case and did not review the affidavit underlying Baker's warrant.

Render contacted a fellow officer, Daniel Knelson, and the two met to arrest Baker at the listed address, which appeared to be a hybrid residence and pawnshop-type business. As the officers approached the business's front door, a neon sign was flashing "open." Through the store's windows, Render could see merchandise inside and a man walking around the store's register area. Render tried to open the door, but it was locked. He asked Officer Knelson to check the side door, thinking it may be unlocked given the sign indicating that the store was open. Render also pushed a doorbell, and the man came to the front door and voluntarily let him in. Render made a comment about the cold weather as the two exchanged pleasantries. The man returned to the store's register area. Knelson quickly followed Render through the front door.

Once inside, Render asked the man if he was "Mr. Baker." The man said that he was, and Render requested his driver's license for verification. Madisonville officers typically ask for identification when they execute an arrest warrant to confirm with central dispatch that the warrant remains active. In response to this request, Baker walked through a door near the register, which signaled to Render that Baker needed to go to another room to get his identification. Render could not see what was beyond the door and was surprised by how fast Baker moved. According to Render, officers executing arrest warrants should always maintain visual contact with arrestees to ensure they are not getting firearms. To keep watch of Baker, Render followed him through the door without asking for permission. The door led to a kitchen

area and then another door led to what Render described as "an office, slash, bedroom, entertainment area" where Baker retrieved his wallet.

As Baker was handing Render his identification, Render noticed a rifle sitting in the corner of the room. Render asked Baker if he was a convicted felon. When Baker confirmed he was, Render handcuffed him. Around this time, Render also noticed jars of marijuana in plain view. He verified with dispatch that Baker had an active arrest warrant, and Officer Knelson secured the firearm. Coordinating with his supervisor, Render left a short time later to secure a search warrant for Baker's residence. Knelson searched Baker incident to his arrest and found crack cocaine in his pocket. After Render obtained the search warrant, officers found more crack cocaine, marijuana, methamphetamine, and firearms at this location.

The government indicted Baker on two drug-related counts, *see* 21 U.S.C. § 841(a)(1), and on one count of being a felon in possession of a firearm, *see* 18 U.S.C. § 922(g)(1). Baker qualified as an armed career criminal, *see id.* § 924(e)(1), so his felon-in-possession charge triggered a 15-year mandatory-minimum sentence. Before trial Baker moved to suppress all evidence seized from his home. He argued both that the affidavit supporting his arrest warrant failed to establish probable cause that he had committed a crime and that he did not consent to the officers entering and moving around his residence. The district court denied the motion. It held that the state judge had properly issued the warrant because the affidavit "provided probable cause to believe that stolen property had been purchased from Baker." Even if the warrant lacked probable cause, the court added, the exclusionary rule should not apply because of the exception to that rule announced in *United States v. Leon*, 468 U.S. 897 (1984). The court reasoned that Officers Render and Knelson had "entered Baker's home on an 'objectively reasonable reliance' on a facially valid arrest warrant."

After the district court's ruling, the parties entered into a plea agreement under Federal Rule of Criminal Procedure 11(c)(1)(C). Baker agreed to plead guilty to all three counts. The government agreed that Baker should receive a 240-month sentence and that he could appeal the district court's denial of his suppression motion. The court accepted Baker's conditional plea and imposed a 240-month sentence.

Baker appeals the suppression ruling.  We review the district court's factual findings for clear error and its legal conclusions de novo.  *See United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004) (en banc).

II

The Fourth Amendment provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."  U.S. Const. amend. IV.  When interpreting the amendment's "Reasonableness Clause," the Supreme Court has distinguished arrests in public places from those in private homes.  A warrantless arrest in public qualifies as a reasonable "seizure" so long as officers have probable cause that the arrestee committed a crime.  *United States v. Watson*, 423 U.S. 411, 417–24 (1976).  If, by contrast, officers force their way into an individual's home to make the arrest, they generally must get an arrest warrant.  *Payton v. New York*, 445 U.S. 573, 602–03 (1980).  The need for a warrant triggers the Fourth Amendment's "Warrant Clause," which also requires "probable cause." *See id.* at 602.

This case implicates two legal questions about arrest warrants.  First: Did Officer Render's execution of the arrest warrant comport with the Reasonableness Clause?  Second: Did the state judge properly find that probable cause existed under the Warrant Clause and, if not, should the exclusionary rule apply to the evidence uncovered as a result of the arrest?

A.  Execution of the Arrest Warrant

We start with Officer Render's conduct in executing the warrant.  The Supreme Court has held that "an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within." *Payton*, 445 U.S. at 603.  Decisions from our court and others have debated whether *Payton*'s "reason to believe" language requires probable cause or some lower level of suspicion that a suspect is at a home.  *Compare United States v. Hardin*, 539 F.3d 404, 415–16 & n.6 (6th Cir. 2008), *with United States v. Pruitt*, 458 F.3d 477, 482 (6th Cir. 2006); *see United*

*States v. Vasquez-Algarin*, 821 F.3d 467, 474–77 (3d Cir. 2016). Yet, whether or not officers have reason to believe a suspect is inside, they generally may knock at the front door, converse with the person who answers, and enter if they obtain consent. *See United States v. Wooden*, 945 F.3d 498, 502 (6th Cir. 2019); *cf. Fernandez v. California*, 571 U.S. 292, 298 (2014). Such "[c]onsensual encounters do not lose their propriety . . . merely because they take place at the entrance of a citizen's home." *United States v. Thomas*, 430 F.3d 274, 277 (6th Cir. 2005). And police ordinarily need no suspicion for this type of "knock and talk." *See id.* (citing cases).

The Supreme Court has recognized, too, that "[e]very arrest must be presumed to present a risk of danger to the arresting officer." *Washington v. Chrisman*, 455 U.S. 1, 7 (1982). The Court has thus held that "it is not 'unreasonable' under the Fourth Amendment for a police officer, as a matter of routine, to monitor the movements of an arrested person, as his judgment dictates, following the arrest." *Id.* When inside a home, moreover, the police may, "as a precautionary matter and without probable cause or reasonable suspicion, look in closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched." *Maryland v. Buie*, 494 U.S. 325, 334 (1990); *see also United States v. Roberts*, 612 F.3d 306, 310 (5th Cir. 2010); *United States v. Harness*, 453 F.3d 752, 755–56 (6th Cir. 2006).

The Supreme Court has also recognized that suspects routinely "flee across jurisdictional boundaries[.]" *United States v. Hensley*, 469 U.S. 221, 231 (1985). So the officer who executes an arrest warrant often will not be the officer who provides the affidavit seeking it. Does the Fourth Amendment impose an independent duty on the officer making the arrest to ensure that probable cause existed for the already-issued warrant? No. "Police officers who arrest a suspect based on a warrant that they did not themselves seek 'are entitled to assume that the officers' who did obtain the warrant 'offered the magistrate the information requisite to support an independent judicial assessment of probable cause.'" *United States v. Hewlett*, 395 F.3d 458, 461 (D.C. Cir. 2005) (quoting *Whiteley v. Warden, Wyo. State Penitentiary*, 401 U.S. 560, 568 (1971)). True, if the warrant turns out to be invalid, the "otherwise illegal arrest cannot be insulated from challenge by the decision of the instigating officer to rely on fellow officers to make the arrest." *Whiteley*, 401 U.S. at 568. But if probable cause existed for the warrant, an

officer may arrest the suspect without personally learning the facts establishing probable cause. *Hensley*, 469 U.S. at 230–31. This "common sense" conclusion "minimizes the volume of information concerning suspects that must be transmitted to other jurisdictions and enables police in one jurisdiction to act promptly in reliance on information from another jurisdiction." *Id.* at 231.

How do these rules play out here? All of Officer Render's actions were reasonable and none violated the Fourth Amendment's Reasonableness Clause. Take the events one step at a time. Render initially learned of Baker's address from the arrest warrant and saw a man through a window moving around the register area of the identified location. Did these facts give Render a "reason to believe" that Baker was inside? *Payton*, 445 U.S. at 603. We need not consider the question because the door was locked and so Render initiated a "knock and talk." *See Thomas*, 430 F.3d at 277. According to Render, the man came to the door and let him into the store area of the residence in a "very welcoming" manner. Render thus gained entry through consent; he did not need to invoke the authority of the warrant. *See Wooden*, 945 F.3d at 502.

Following his department's standard practice, Render next learned that the man was "Mr. Baker" and asked him for his identification to verify that he was the individual listed in the warrant. These inquiries were equally reasonable to ensure that Render had the right man. As the Supreme Court has held, "[i]nterrogation relating to one's identity or a request for identification by the police does not, by itself, constitute a Fourth Amendment seizure." *Hiibel v. Sixth Judicial Dist. Ct. of Nev.*, 542 U.S. 177, 185 (2004) (citation omitted). And, as the Fifth Circuit noted when an officer asked for an arrestee's identification pursuant to "department policy," the officer "reasonably requested identification to verify that the suspect was who he said he was." *Roberts*, 612 F.3d at 311. After all, officers might open themselves up to challenge if they recklessly arrest the wrong person. *Cf. Seales v. City of Detroit*, 959 F.3d 235, 240 (6th Cir. 2020); *Hill v. Scott*, 349 F.3d 1068, 1072–73 (8th Cir. 2003).

Baker then quickly left the location's store area through a door, and Render followed him. The district court made no factual findings about whether Baker impliedly consented to Render accompanying him. We do not think it matters. By that point, Render had a reasonable basis to conclude that the man was Baker. And it thus was reasonable for Render "to monitor"

Baker's movements. *Chrisman*, 455 U.S. at 7. "The Supreme Court has rejected the notion that exigent circumstances are required to justify entering an area in which a person has a protected Fourth Amendment privacy right where the entry is effectuated to maintain control over someone being placed under arrest." *Roberts*, 612 F.3d at 310; *see Harness*, 453 F.3d at 756. This case shows why. Render noted that he tries to maintain visual contact with arrestees for safety reasons: "I'm thinking firearms every time." And where did Baker go? To a room with a rifle.

After entering the back room, Officer Render soon saw the rifle and jars of marijuana. The illegality of these items was "immediately apparent" once Render discovered the marijuana and learned Baker was a felon. *Horton v. California*, 496 U.S. 128, 136 (1990). (Baker does not challenge Render's question about his felon status, so we need not consider the point.) This evidence thus triggered the Fourth Amendment's plain-view doctrine. *Id.* at 135–36. Indeed, Officer Render's conduct resembles the conduct of the officer in the Supreme Court's *Chrisman* decision. *See* 455 U.S. at 3–4. There, an officer asked to see the identification of a young person carrying alcohol who was suspected to be under 21. *Id.* at 3. When the suspect said he needed to go to his dorm room to get his identification, the officer accompanied him there and spotted drugs in the room. *Id.* at 3–4. The Court held that the officer had the right to go with the suspect and that he properly saw the drugs "in plain view." *Id.* at 7. The same logic extends to this case. We recognize that *Chrisman* suggested that the officer had *already* placed the suspect under arrest when accompanying him to his dorm room. *Id.* at 6. But Baker offers no arguments and cites no cases suggesting that this distinction matters—at least not in a case in which the officer had an arrest warrant for the suspect he was in the process of arresting. *Cf. Roberts*, 612 F.3d at 311.

Lastly, Officer Render did not confirm for himself the state judge's finding that probable cause existed for the arrest warrant. He explained: "If I see a judge has signed it and found probable cause, that's good enough for me." The Fourth Amendment did not require him to do more. Officers executing arrest warrants need not "grade" the work of state judges by reevaluating whether they correctly found probable cause. *See Hensley*, 469 U.S. at 230–31. Indeed, "[a] warrant is a judicial mandate to an officer to conduct a search or make an arrest, and

the officer has a sworn duty to carry out its provisions." *Utah v. Strieff*, 136 S. Ct. 2056, 2062 (2016) (quoting *Leon*, 468 U.S. at 920 n.21). That was true in this case. The warrant "commanded" peace officers to arrest Baker. This fact does not mean one officer may "obtain a warrant on the basis of a 'bare bones' affidavit and then rely on colleagues who are ignorant of the circumstances under which the warrant was obtained to conduct the" arrest. *Leon*, 468 U.S. at 923 n.24. But the warrant's validity addresses the second question presented by this case; it does not affect the reasonableness of Officer Render's actions in executing the warrant. Render acted "objectively reasonably when he relied upon the police computer record" showing the warrant existed. *Arizona v. Evans*, 514 U.S. 1, 16 (1995).

Baker's counterarguments do not change things. He concedes he gave consent for Render to enter his residence's store area. But he argues that his consent did not extend to the back room where Render followed him. The arrest warrant, however, gave Render the authority to monitor Baker. *Chrisman*, 455 U.S. at 7. Baker responds that the warrant could not grant this authority because Render had not called his central dispatch beforehand to ensure that it remained active. Yet Render saw the warrant on Kentucky's e-warrant system. Baker, who bore the burden of proof, presented no evidence suggesting that this e-warrant system was so riddled with errors as to make Render's reliance on it unreasonable. *Cf. Herring v. United States*, 555 U.S. 135, 146 (2009); *see United States v. Rodriguez-Suazo*, 346 F.3d 637, 643 (6th Cir. 2003). The warrant also turned out to be active, so Render's reliance on the system proved entirely justified in this case. All told, we see no basis to suppress the evidence from Baker's home based on the way in which Render arrested him.

## B. Probable Cause for the Arrest Warrant

This case's second question concerns the Fourth Amendment's Warrant Clause: Was the warrant for Baker's arrest supported by "probable cause" and, if not, should we suppress the evidence recovered during that arrest as "fruit of the poisonous tree"? *See Graves v. Mahoning County*, 821 F.3d 772, 777 (6th Cir. 2016). While the affidavit supporting the warrant likely should have included more detail, it is not so recklessly inadequate as to trigger the "exclusionary rule."

1

This case implicates both the standard for probable cause to obtain an arrest warrant and the remedy that applies when a court concludes (after the fact) that a warrant fell short.

*Standard*. "Probable cause 'is not a high bar.'" *District of Columbia v. Wesby*, 138 S. Ct. 577, 586 (2018) (citation omitted). "It 'requires only a probability or substantial chance of criminal activity, not an actual showing of such activity.'" *Id.* (quoting *Illinois v. Gates*, 462 U.S. 213, 244 n.13 (1983)). Whether a set of facts meets this standard turns on a practical assessment commonly made by "reasonable and prudent" people, not a technical assessment reserved for "legal technicians." *Maryland v. Pringle*, 540 U.S. 366, 370 (2003) (quoting *Gates*, 462 U.S. at 231). Beyond explaining that this standard requires more than a bare-bones conclusion that a crime has occurred, *see Whiteley*, 401 U.S. at 564–65, the Court has refused to offer clear rules separating the hazy "border between suspicion and probable cause," *Brinegar v. United States*, 338 U.S. 160, 177 (1949); *see Gates*, 462 U.S. at 239. It has instead said that "the probable-cause standard is incapable of precise definition or quantification into percentages because it deals with probabilities and depends on the totality of the circumstances." *Pringle*, 540 U.S. at 371.

The probable-cause standard applies differently in different contexts. This case involves probable cause for an *arrest*, not a *search*. While the same "prudent person standard" governs both contexts, the arrest and search inquiries "focus" on "different" things. *Greene v. Reeves*, 80 F.3d 1101, 1106 (6th Cir. 1996). The test for an arrest asks whether there is "a reasonable ground for belief of guilt" specific to the suspect. *Pringle*, 540 U.S. at 371 (citation omitted). This test is less "complex" than the one for a search. 2 Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 3.1(b), Westlaw (database updated Oct. 2019). The search inquiry requires courts to ask whether a "nexus" exists between a crime and the place to be searched and whether information in an affidavit is sufficiently timely to think that the sought-after evidence still remains at the identified location. *See id.* §§ 3.1(b), 3.7(a)–(d); *e.g.*, *United States v. Brown*, 828 F.3d 375, 382 (6th Cir. 2017); *United States v. Hython*, 443 F.3d 480, 485–87 (6th Cir. 2006). So the "existence of probable cause to arrest will not necessarily

establish probable cause to search." *United States v. Savoca*, 761 F.2d 292, 297 (6th Cir. 1985) (citation omitted).

This case also involves a judge's independent decision that probable cause exists for a *warrant*, not an officer's on-the-spot decision that probable cause exists for an *arrest*. "[C]ourts more often will deem seizures reasonable when they're associated with a warrant." *Graves*, 821 F.3d at 777. We review an officer's probable-cause conclusion de novo. *Ornelas v. United States*, 517 U.S. 690, 699 (1996). But "[a] magistrate's 'determination of probable cause should be paid great deference by reviewing courts.'" *Gates*, 462 U.S. at 236 (citation omitted). This distinction flows from the Supreme Court's "preference" for "warrants" and requires courts to give judges the benefit of the doubt in "doubtful or marginal cases." *Id.* at 237 n.10 (citation omitted).

*Remedy*. The Fourth Amendment "contains no provision expressly precluding the use of evidence obtained in violation of its commands." *Evans*, 514 U.S. at 10. But the Supreme Court has adopted an "exclusionary rule" that bars the government from using evidence in a criminal trial when police uncover it unconstitutionally. *Davis v. United States*, 564 U.S. 229, 236 (2011). The Court once indiscriminately applied this rule to all Fourth Amendment violations. *See Whiteley*, 401 U.S. at 568–69. More recently, it has called the rule "a 'judicially created remedy' of [the] Court's own making." *Davis*, 564 U.S. at 238 (citation omitted). The Court has thus felt free to adjust the rule's scope in common-law fashion. *See Herring*, 555 U.S. at 140–44.

To decide whether the rule applies, the Court asks if its "deterrence benefits outweigh its substantial social costs." *Strieff*, 136 S. Ct. at 2061 (citation omitted). As a benefit, the rule "deter[s] future Fourth Amendment violations." *Davis*, 564 U.S. at 236–37. As a cost, the rule often means "letting guilty and possibly dangerous defendants go free—something that 'offends basic concepts of the criminal justice system.'" *Herring*, 555 U.S. at 141 (citation omitted). Balancing these interests, the Court has held that the exclusionary rule should apply only to police misconduct and only if that misconduct is "sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system." *Id.* at 144. This test is met if an officer violates "Fourth Amendment rights

deliberately, recklessly, or with gross negligence." *Davis*, 564 U.S. at 240. It is not met if the violation arises from "'[i]solated,' 'nonrecurring' police negligence[.]" *Id.* at 239 (quoting *Herring*, 555 U.S. at 137).

This common-law balancing has led the Court to reject the exclusionary rule when officers illegally uncover evidence pursuant to a *search* warrant that lacks probable cause, so long as the officers' reliance on that warrant was "objectively reasonable." *Leon*, 468 U.S. at 922. Suppression is not worth its substantial costs in this scenario, the Court explained, because any error in deciding whether probable cause exists for the search warrant belongs primarily to the *magistrate* issuing the warrant, not the *officer* seeking it. *See Davis*, 564 U.S. at 239. And the "officer cannot be expected to question the magistrate's probable-cause determination or his judgment that the form of the warrant is technically sufficient." *Leon*, 468 U.S. at 921.

Yet *Leon* identified "four circumstances in which an officer's reliance would *not* be objectively reasonable." *United States v. White*, 874 F.3d 490, 496 (6th Cir. 2017). As relevant here, the exclusionary rule applies even under *Leon* if the affidavit that officers use to obtain the warrant is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." 468 U.S. at 923 (citation omitted). Given that police misconduct must qualify as "purposeful or flagrant" to justify suppression, *Strieff*, 136 S. Ct. at 2063, this exception applies only if the affidavit can be described as "bare bones," *White*, 874 F.3d at 496. The classic bare-bones affidavit asserts only an officer's conclusion that probable cause exists "without any statement of adequate supporting facts." *Id.* at 498 (quoting *Nathanson v. United States*, 290 U.S. 41, 46 (1933)). For search warrants, we have found this test met when the affidavit lacked any allegation tying illegal activity to the place to be searched, *Brown*, 828 F.3d at 385–86; *United States v. McPhearson*, 469 F.3d 518, 526–27 (6th Cir. 2006), or when it contained no basis to believe that contraband would *still* remain there, *see Hython*, 443 F.3d at 485–87. An affidavit seeking a search warrant is not bare bones, by contrast, if it contains "some modicum of evidence, however slight," "between the criminal activity at issue and the place to be searched[.]" *White*, 874 F.3d at 497 (citation omitted); *Carpenter*, 360 F.3d at 596.

These criteria and cases concern *search* warrants.  As far as we are aware, the Supreme Court has not technically extended *Leon*'s framework for warrants lacking probable cause to the *arrest*-warrant context.  *Cf. Malley v. Briggs*, 475 U.S. 335, 344 n.6 (1986).  The Court has, however, used similar logic in related situations.  It has held that the exclusionary rule should not apply when "an officer reasonably believes there is an outstanding arrest warrant, but that belief turns out to be wrong because of a negligent bookkeeping error by" a police or judicial employee.  *Herring*, 555 U.S. at 137; *Evans*, 514 U.S. at 15–16.  Many other courts also have held that *Leon*'s "exception to the exclusionary rule is applicable to arrest warrants in much the same way it applies to search warrants."  LaFave, *supra*, § 5.1(h) (citing, among others, *United States v. Teitloff*, 55 F.3d 391 (8th Cir. 1995); *United States v. Gobey*, 12 F.3d 964 (10th Cir. 1993); *United States v. Fama*, 758 F.2d 834 (2d Cir. 1985)); *cf. United States v. Newsome*, 504 F. App'x 463, 464–65 (6th Cir. 2012).  The Supreme Court's current approach to the exclusionary rule all but compels this result.  *See, e.g.*, *Herring*, 555 U.S. at 136–39.  Under the Court's balancing of costs and benefits, *Leon*'s framework should apply to arrest warrants in a manner accounting for the "different" factors that are relevant to those types of warrants.  *See Greene*, 80 F.3d at 1106.

2

Under these standards, we opt not to decide whether the state judge properly found probable cause for the warrant to arrest Baker.  *See White*, 874 F.3d at 495–96.  This case instead falls within *Leon*'s heartland.  The affidavit seeking the warrant was not so recklessly bare bones as to trigger the exclusionary rule and its "substantial social costs."  *Herring*, 555 U.S. at 141 (citation omitted).

The warrant charged Baker with receiving stolen property.  Officer Alan King, the affiant and a police officer from the nearby Providence Police Department, stated that on April 19, 2015, a "Nextbook tablet" and other items were stolen from a home in Providence.  King attested that the tablet "turned up pawned" at River City Pawn in Madisonville and was recovered from that location.  King also said: "An interview with the subject who pawned the tablet revealed that the tablet was purchased in Madisonville, KY from a Tyslen Baker."  Based on these facts, a state judge found probable cause to believe that Baker violated Kentucky Revised Statutes

§ 514.110.  It provides: "A person is guilty of receiving stolen property when he receives, retains, or disposes of movable property of another knowing that it has been stolen, or having reason to believe that it has been stolen, unless the property is received, retained, or disposed of with intent to restore it to the owner." *Id.* § 514.110(1).

Whether or not this affidavit established probable cause, it included "some modicum of evidence," even if only "slight," connecting "the criminal activity at issue" to the person to be seized. *White*, 874 F.3d at 497 (citation omitted).  By noting that Baker had sold the Nextbook to the subject who pawned it, the affidavit averred facts suggesting that Baker "dispose[d] of [the] movable property of another[.]"  Ky. Rev. Stat. § 514.110(1).  And while the affidavit did not offer more details about whether Baker knew or should have known that the tablet was stolen, *see id.*, an officer would not have been reckless in believing that Baker's possession created an inference of this knowledge that was sufficient for probable cause.  Indeed, "[f]or centuries courts have instructed juries that an inference of guilty knowledge may be drawn from the fact of unexplained possession of stolen goods." *Barnes v. United States*, 412 U.S. 837, 843 (1973).  "If a jury can permissibly find guilty knowledge beyond a reasonable doubt" based on one's possession of stolen goods, an officer would not act recklessly in believing that Baker's possession of the tablet created a substantial chance he knew (or should have known) it was stolen. *Rodriguez v. City of Cleveland*, 439 F. App'x 433, 452–53 (6th Cir. 2011); *see Young v. Owens*, 577 F. App'x 410, 415 (6th Cir. 2014); *Bender's Inc. v. Walker*, 1 F. App'x 317, 325 (6th Cir. 2001).

True, the jury instruction discussed by the Supreme Court in *Barnes* (like the common law) allowed juries to find the required knowledge "from unexplained possession of *recently* stolen" goods.  412 U.S. at 838 (emphasis added).  And some 21 months passed between when the tablet was reported stolen and when King sought a warrant for Baker's arrest.  But *probable cause* "does not require the same type of specific evidence of each element of the offense as would be needed to support a conviction" *beyond a reasonable doubt*. *Adams v. Williams*, 407 U.S. 143, 149 (1972); *see Thacker v. City of Columbus*, 328 F.3d 244, 256 (6th Cir. 2003).  Our cases thus have found possession sufficient to justify a finding of probable cause without separately discussing any temporal-proximity element. *See Young*, 577 F. App'x at 415;

*Rodriguez*, 439 F. App'x at 452–53. In other contexts, courts have also indicated that "[w]hile intent is an element of the crime which must be proved at trial, it is not necessary in order to establish probable cause to arrest." *United States v. Everett*, 719 F.2d 1119, 1120 (11th Cir. 1983) (per curiam); *United States v. Abney*, 1994 WL 620799, at *1 (4th Cir. Nov. 2, 1994) (per curiam). Here, moreover, we need not even hold (one way or the other) that the allegations of Baker's possession sufficed to establish probable cause that he committed the crime. We need only hold that those allegations sufficed to avoid the bare-bones label that triggers the exclusionary rule. *See White*, 874 F.3d at 497.

Also true, Officer King did not himself see Baker possess the stolen Nextbook recovered from the pawn shop. Rather, he relied on the hearsay statement from the unnamed "subject" who bought the tablet from Baker. Having interviewed the subject, King clearly could have—and likely should have—included more details about this subject's reliability based on what had been said to him. That conclusion, however, does not change the fact that the affidavit contained a "modicum of evidence" connecting Baker to a crime. *Id.* (citation omitted). An officer would not have acted recklessly—as opposed to, at most, negligently—in agreeing with the state judge that the information from this subject sufficed. *Cf. Strieff*, 136 S. Ct. at 2063.

The Supreme Court has recognized that "[i]nformants' tips doubtless come in many shapes and sizes from many different types of persons," ranging from the professional "informant" to the "honest citizen." *Gates*, 462 U.S. at 232–34. On one end of this witness spectrum, we have held that "a known informant's statement can support probable cause even though the affidavit fails to provide any additional basis for the known informant's credibility and the informant has never provided information to the police in the past." *United States v. Kinison*, 710 F.3d 678, 682 (6th Cir. 2013); *United States v. Miller*, 314 F.3d 265, 270 (6th Cir. 2002); *United States v. Allen*, 211 F.3d 970, 976 (6th Cir. 2000) (en banc); *United States v. Pelham*, 801 F.2d 875, 878 (6th Cir. 1986). We have likewise often required little in the way of corroboration for statements from "eyewitnesses" to a crime. *See Ahlers v. Schebil*, 188 F.3d 365, 370 (6th Cir. 1999); *see also Newsome*, 504 F. App'x at 464–65; *Harness*, 453 F.3d at 754–55; *Thacker*, 328 F.3d at 257. On the other end, we have required significantly more corroboration for "[t]ips from anonymous persons." *United States v. Howard*,

632 F. App'x 795, 799 (6th Cir. 2015); *United States v. May*, 399 F.3d 817, 825 (6th Cir. 2005). Perhaps the biggest takeaway from our caselaw is its confirmation of what the Supreme Court said long ago: Given the inquiry's fact-dependent nature, "one determination will seldom be a useful 'precedent' for another." *Gates*, 462 U.S. at 238 n.11.

An officer could reasonably (or at least not recklessly) conclude that the witness in this case fell on the side of the spectrum requiring little in the way of corroboration. The subject was not an "anonymous" informant—the category of witnesses that generally requires the most corroboration. *See May*, 399 F.3d at 825. Rather, King dealt with a known (albeit unnamed) individual. *Id.* And the corroborating factors for this subject cut both ways. Having possessed the stolen laptop, the subject had an obvious motive to shift blame. Yet Officer King's affidavit did make clear that the police had physical evidence (the recovered tablet) corroborating the subject's story. And we have recognized that the statements of a person "whose identity was known to the police and who would be subject to prosecution for making a false report" are "entitled to far greater weight than those of an anonymous source." *Id.* at 824–25; *see Miller*, 314 F.3d at 270. These factors sufficed to avoid any recklessness finding in this case.

That leaves Baker with one remaining argument. He suggests that receiving stolen property is a misdemeanor if the property's value falls below $500, Ky. Rev. Stat. § 514.110(3), that Kentucky has a one-year statute of limitations for misdemeanors, *id.* § 500.050(2), and that the statute of limitations likely had run when the warrant issued in January 2017 given that the theft occurred in April 2015. But Baker cites no caselaw suggesting that police officers (who are not lawyers) behave recklessly if they do not independently calculate the statute of limitations before seeking or executing an arrest warrant. Unsurprisingly, the existing caselaw cuts against him. The Third Circuit rejected this type of argument in a § 1983 suit against an officer who sought an arrest warrant because the argument "would place far more responsibility on police officers than is required by their calling." *Sands v. McCormick*, 502 F.3d 263, 269 (3d Cir. 2007). And the Eleventh Circuit rejected this type of argument in another § 1983 suit against an officer who effected the arrest because "police officers have no responsibility to determine the viability of a statute of limitations defense when executing a valid arrest warrant." *Pickens v. Hollowell*, 59 F.3d 1203, 1206–08 (11th Cir. 1995). Whether right or wrong, these cases show

that the officers in this case would not have acted recklessly (so as to trigger the exclusionary rule under *Leon*) even if they had failed to consider whether the statute of limitations had run.

We affirm.

———————————

**DISSENT**

———————————

BERNICE BOUIE DONALD, Circuit Judge, dissenting. I agree with the majority's holding that Officer Render, as the arresting officer, did not violate the Fourth Amendment by virtue of his own decision-making or behavior in executing the warrant for Baker's arrest. Unlike the majority, however, I find that the affidavit completed by Officer King, the instigating officer, is so lacking in indicia of probable cause that no reasonable officer would rely on the resulting warrant. It is my position that the majority's willingness to approve as constitutionally sound such grossly negligent, if not reckless, conduct by the instigating officer contravenes Fourth Amendment jurisprudence. Accordingly, I dissent.

Typically, when an officer acting with objective good faith obtains a warrant from a magistrate or judge and acts within its scope, there is not police illegality and thus nothing to deter. *United States v. Leon*, 468 U.S. 897, 920-21 (1984). This is because, ordinarily, "an officer cannot be expected to question [a] magistrate's probable-cause determination or [] judgment that the form of the warrant is technically sufficient." *Id.* at 921. Still, "the officer's reliance on the magistrate's probable-cause determination and on the technical sufficiency of the warrant . . . must be objectively reasonable . . . ." *Id.* at 922. In determining the objective reasonableness of reliance on a warrant, "[i]t is necessary to consider . . . not only . . . the officers who eventually executed a warrant, but also . . . the officers who originally obtained it or who provided information material to the probable-cause determination." *United States v. Bowling*, 900 F.2d 926, 932 (1990) (quoting *Leon*, 468 U.S. at 923 n.24).

An officer cannot exercise objectively reasonable reliance, meaning that the good-faith exception would not apply and suppression is appropriate, where an officer "rel[ied] on a warrant based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *United States v. McCoy*, 905 F.3d 409, 416 (6th Cir. 2018) (quoting *Leon*, 468 U.S. at 923). Thus, courts do not allow an illegal arrest to be insulated from challenge by the decision of an instigating officer to rely on fellow officers to make the arrest.

*Leon*, 468 U.S. at 923 n.24 ("Nothing in our opinion suggests, for example, that an officer could obtain a warrant on the basis of a 'bare bones' affidavit and then rely on colleagues who are ignorant of the circumstances under which the warrant was obtained to conduct the search."); *see Whiteley v. Warden*, 401 U.S. 560, 568 (1971) ("[A]n otherwise illegal arrest cannot be insulated from challenge by the decision of the instigating officer to rely on fellow officers to make the arrest.").

"An affidavit that is so lacking in indicia of probable cause that no reasonable officer would rely on the warrant [is] known as a 'bare bones' affidavit." *United States v. White*, 874 F.3d 490, 496 (6th Cir. 2017); *see United States v. Helton*, 314 F.3d 812, 824-25 (6th Cir. 2003). "A bare-bones affidavit, in turn, is . . . one that states only 'suspicions, beliefs, or conclusions, without providing some underlying factual circumstances regarding veracity, reliability, and basis of knowledge[,]'" *i.e.*, "a conclusory affidavit . . . assert[ing] 'only the affiant's belief that probable cause existed.'" *White*, 874 F.3d at 496 (first quoting *United States v. Laughton*, 409 F.3d 744, 748 (6th Cir. 2005), then quoting *United States v. Williams*, 224 F.3d 530, 533 (6th Cir. 2000)). Differing from an affidavit that only lacks probable cause, "[a]n affidavit cannot be labeled 'bare bones' simply because it lacks the requisite facts and inferences to sustain the magistrate's probable-cause finding." *United States v. Gilbert*, 952 F.3d 759, 763 (6th Cir. 2020) (quoting *White*, 874 F.3d at 497) ; *see Helton*, 314 F.3d at 824. As generally alluded to by the majority, "an affidavit is not bare bones if . . . it contains 'a minimally sufficient nexus between the illegal activity and [the person to be arrested].'" *Cf. White*, 874 F.3d at 496-97 (quoting *United States v. Carpenter*, 360 F.3d 591, 596 (6th Cir. 2004); *see* Part B.1, *infra*. Accordingly, "[i]f the reviewing court is 'able to identify in the averring officer's affidavit *some* connection, regardless of how remote it may have been'—'some modicum of evidence, however slight'—'between the criminal activity at issue'" and the person to be seized, "then . . . official reliance on it is reasonable" and suppression inappropriate. *Cf. White*, 874 F.3d at 497 (emphasis in original) (quoting *Laughton*, 409 F.3d at 749-50). Notably, however, the mere presence of some facts or circumstances in an affidavit is not enough if those facts are not "adequate supporting facts," meaning that they fail to provide a magistrate or judge with the facts

and circumstances necessary to tie the criminal conduct to an offending party. *Id.* at 498.**[1]** In other words, an affidavit containing some facts, may still be insufficient to provide a "modicum of evidence" "between the criminal activity at issue" and the person to be seized. *Cf. id.* at 497-98 (quoting *Laughton*, 409 F.3d at 749-50). Informing this consideration is that only when law enforcement operates in "deliberate, reckless, or grossly negligent disregard for Fourth Amendment rights will the heavy toll of suppression pay its way." *Id.* at 498 (quotations omitted) (quoting *Davis v. United States*, 564 U.S. 229, 237-38 (2011)).

With that legal background in mind, we turn now to the affidavit in this case. Distilled to its essence, it states that a Nextbook tablet, among other items, was stolen on April 14, 2015, from a residence in Providence, Kentucky. The tablet was pawned and subsequently recovered by law enforcement. Law enforcement interviewed the subject who pawned the tablet, and during the interview, the subject informed law enforcement that they purchased the tablet from Baker in Madisonville, Kentucky.

As an initial matter, the factual basis of the affidavit here is tenuously supported. There are three categories of informants: "(1) named informants; (2) confidential informants (who are known to the police but not to others); and (3) anonymous informants (who are unknown to everyone)." *United States v. Williams*, 302 F. App'x 363, 367 (6th Cir. 2008). Here, we are dealing with a confidential informant, as they were known by the instigating officer but unnamed in the affidavit and unknown to the judicial officer that issued the warrant. "Whereas naming an informant is often, but not always, an indicator of reliability, the police must find other ways to bolster the tips of . . . confidential or anonymous[] informants." *United States v. Ferguson*, 252 F. App'x 714, 720-21 (6th Cir. 2007) (citation omitted); *see also United States v. Rodriguez-Suazo*, 346 F.3d 637, 646 (6th Cir. 2003). For example, when dealing with a confidential informant, "we must consider the informant's veracity, reliability, and basis of knowledge. *Id.*

---

**[1]***See also White*, 874 F.3d at 496-97 ("[A]n affidavit is not bare bones if, although falling short of the probable-cause standard, it contains 'a *minimally sufficient nexus* between the illegal activity and the place to be searched.'" (quoting *United States v. Carpenter*, 360 F.3d 591, 596 (6th Cir. 2004); emphasis added); *Illinois v. Gates*, 462 U.S. 213, 276 (Brennan, J., dissenting) ("The Court has insisted that police officers provide magistrates with the underlying facts and circumstances that support the officers' conclusions. . . . 'Under the Fourth Amendment, an officer may not properly issue a warrant to search a private dwelling unless he can find probable cause therefor from facts or circumstances presented to him under oath or affirmation.'" (citing and quoting *Nathanson v. United States*, 290 U.S. 41, 46-47 (1933)).

(quotations omitted) (quoting *United States v. Smith*, 182 F.3d 473, 477 (6th Cir. 1999)). These three elements, though not entirely separate and independent requirements, are understood "'as closely intertwined issues that may usefully illuminate the commonsense, practical question [of] whether there is probable cause' to believe that a person has committed a crime." *Williams*, 302 F. App'x at 367-68 (quoting *United States v. Hopper*, 58 F. App'x 619, 625 (6th Cir. 2003)). "Another factor to consider is law enforcement's corroboration of the informant's tip." *Rodriguez-Suazo*, 346 F.3d at 646.

Here, the majority concludes that law enforcement's possession of the recovered tablet sufficiently corroborates the subject's story, but that may be a stretch. The fact that the informant pawned a stolen tablet previously sold to them only goes so far. As the majority notes, such a circumstance cuts both ways when considering the subject's veracity, as they have a motive to shift blame or lie. And even if one considered the informant reliable, by virtue of law enforcement's ability to find and hold them accountable for any statements made, there is still a basis of knowledge problem, as the subject's possession does not necessarily evidence a basis of knowledge for the assertion that Baker knowingly received the stolen tablet. Indeed, as discussed below, the subject that pawned the tablet made no factual assertion evidencing that Baker knew or had reason to know the tablet was stolen, and we see no police corroboration indicating otherwise. Even if I agreed with the majority's finding, then—that the affidavit or information before the magistrate consisted of enough information to sufficiently demonstrate the informant's veracity, reliability, and basis of knowledge, under the totality of the circumstances—the majority opinion suffers from an even greater foundational problem.

Contrary to the majority's holding, the affidavit, by itself, does not present a minimally sufficient nexus between the illegal activity and Baker. Certainly, the affidavit noted that Baker sold the stolen tablet to the subject who pawned it and, thus, averred facts suggesting that Baker "dispose[d] of [the stolen] movable property of another[.]" Ky. Rev. Stat. § 514.110(1). That, however, is to say nothing of the knowledge requirement seen in the statute, effectively criminalizing and prohibiting only the conduct of those who receive stolen property with actual or constructive knowledge that the moveable property is stolen. *Id.* (requiring that the offender "know[] that [the property] has been stolen[] or hav[e] reason to believe that it has been stolen"

and stating that "[t]he possession by any person of any recently stolen movable property shall be prima facie evidence that such person knew such property was stolen"). The officers here knew of this prohibition, or at least we can impose such knowledge on them. *See United States v. Peltier*, 422 U.S. 531, 542 (1975) (holding that the objective reasonableness standard requires officers to have a reasonable knowledge of what the law prohibits); *see also Leon*, 468 U.S. at 919 n.20. To surpass this hurdle, the majority reasons that, because a jury can permissibly draw an inference of, and find, guilty knowledge beyond a reasonable doubt based on one's possession of stolen goods, an officer would not act recklessly in believing that Baker's possession of the tablet created a substantial chance he knew it was stolen. *See* Part B.2, *infra*. The majority's assertion, however, quotes the law out of context and, thus, misstates the law by not appreciating that the relied-upon inference requires the possession of *recently* stolen property.

According to the Court's published opinion in *United States v. Wolfenbarger*, the "unexplained possession of *recently* stolen property permits a jury to draw the inference that the person in possession knew the property to have been stolen." 426 F.2d 992, 995 (6th Cir. 1970) (emphasis added); *see also United States v. Holmes*, 797 F. App'x 912, 915 (6th Cir. 2019) (citing *United States v. Johnson*, 741 F.2d 854, 857 (6th Cir. 1984), for the proposition that "[t]his Court has long recognized the inference that possessing recently stolen property connects the possessor to the crime"). Looking to the subsequently issued, unpublished cases cited by the majority, we see the same rule. For example, in *Bender's, Inc. v. Walker*, this Court, citing the Kentucky statute at issue here, explicitly cabined the referenced inference of guilty knowledge by requiring that the property be recently stolen. 1 F. App'x 317, 324-25 (6th 2001). In *Rodriguez v. City of Cleveland*, the same rule is applied. 439 F. App'x 433 (6th Cir. 2011). In *Rodriguez*, the facts and circumstances within the city's knowledge at the time of arrest warranted a belief that Rodriguez committed a crime because, in part, an employee of Rodriguez's business informed the city of a stolen truck on Rodriguez's property and upon running the truck's VIN number, the city determined it was stolen within the last six months. *Rodriguez*, 439 F. App'x at 452-53.[2]

---

[2]*Young*, 577 F. App'x 410, another case relied upon by the majority, is not sufficiently analogous to the facts and circumstances here as there were multiple factors that the Court considered collectively to find an adequate

Further, the cases relied upon by the majority quote and are progenies of the Supreme Court's opinion of *Barnes v. United States*, 412 U.S. 837 (1973), in which the Court espoused the same recency rule. *See, e.g.*, *Owens*, 577 F. App'x at 415; *Rodriguez*, 439 F. App'x at 452. In *Barnes*, the Court affirmed a petitioner's conviction for knowingly possessing stolen property. *Id.* at 838, 840-41, 848. The Court reasoned that the challenged jury instruction permitting an inference of guilt from unexplained possession of recently stolen property was proper and that because the evidence established that the petitioner possessed recently stolen Treasury checks payable to persons he did not know, without an explanation of innocence, there was sufficient evidence to enable the jury to find beyond a reasonable doubt that petitioner knew the checks were stolen. *Id.* at 843-46.

The authorities relied upon by the *Barnes* Court bolster the requirement that the property be recently stolen for an inference of guilt. The inference is cited as the descendant of a presumption "running through a dozen centuries." *Id.* at 843-44 (quoting James Thayer, Preliminary Treatise on Evidence 327 (1898)). Referencing the laws of Ine, who was the King of Wessex, A.D. 699-725, the Supreme Court noted that "'if [property] w[as] *recently* stolen, then was one "taken with the mainour,"—a state of things that formerly might involve immediate punishment, without a trial; and, later, a trial without a formal accusation; and, later still, a presumption of guilt which, in the absence of contrary evidence, justified a verdict, and at the present time is vanishing away into the mere judicial recognition of a permissible inference . . . .'" *Barnes*, 412 U.S. at 844, n.5 (emphasis added) (quoting Thayer, at 328). Early Supreme Court precedent adopts the same recency requirement. *Wilson v. United States*, 162 U.S. 613, 619 (1896) ("Possession of the fruits of crime, recently after its commission, justifies the inference that the possession is guilty possession, and, though only prima facie evidence of guilt, may be of controlling weight unless explained by the circumstances or accounted for in some way consistent with innocence."). Our sister circuits have also consistently approved

basis of probable cause. *Id.* at 415-16. Moreover, the temporal proximity concern informs the inference that a defendant knew, or had reason to know, the property was stolen. The inference of knowledge in *Young*, was formed as a result of the defendant repeatedly buying unopened items, still in their original packaging, for less than a third of their retail value. *Id.* at 415. As another example, the majority cites *Everett*, 719 F.2d 1119. *Everett*, however, is distinguishable, as the court, in its concern of the factual basis for the element of intent, determined that probable cause for arrest was sufficient because a deputy sheriff saw the defendant pass a counterfeit note, identified the defendant as the one who passed it, and identified that the note was counterfeit. *Everett*, 719 F.2d at 1120.

instructions implementing a practically identical recency requirement. *United States v. Burks*, 678 F.3d 1190, 1196 (10th Cir. 2012); *United States v. Fernandez*, 374 F. App'x 912, 918 (11th Cir. 2010); *United States v. Burns*, 597 F.2d 939, 942 (5th Cir. 1979); *United States v. Smith*, 446 F.2d 200, 204 (4th Cir. 1971); *United States v. Hood*, 422 F.2d 737, 752 (7th Cir. 1970); *United States v. Russo*, 413 F.2d 432, 434-35 (2d Cir. 1969). Thus, the applicable rule is clear, and it is not what the majority suggests.

It also bears noting that the term "recently" is a relative term, depending on the circumstances of the particular case for its meaning. *United States v. Johnson*, 741 F.2d at 854. "[A]s the time of possession recedes from the time of theft," the inference of guilty knowledge that may result grows weaker. *Johnson*, 741 F.2d at 854; *Wolfenbarger*, 426 F.2d at 995. Looking to case law on the issue, it appears that the possession of stolen property about a year or more after a theft may not support an inference of guilty knowledge, although possession days to months after a theft often does. *See Wolfenbarger*, 426 F.2d at 993, 995 ("recency" finding possible when a motor vehicle was found some two months after it was stolen); *Gargotta v. United States*, 77 F.2d 977, 982 (6th Cir. 1935) (holding that the possession of pistols 293 days after theft, "cannot in any sense be considered so recent a possession as to sustain a finding of guilty knowledge that the property was stolen"); *see also United States v. Fairfield*, 526 F.2d 8, 12-13 (8th Cir. 1975) (noting that a finding of sufficient recency can be inferred from possessing stolen goods five to fifteen months within their taking); *United States v. Wood*, 500 F.2d 681, 683 (5th Cir. 1974) (holding that six months is sufficient for recency finding); *Altom v. United States*, 454 F.2d 289, 294 (7th Cir. 1971) (finding that a lapse of 15 months still allowed for a determination that property was recently stolen). The Supreme Court of Kentucky has also found that property was "recently stolen" when a petitioner first argued on appeal that he possessed the property fifteen months after the initial theft occurred, *Fairley v. Commonwealth*, 527 S.W.3d 792, 801-02 (Ky. 2017); notably, this case was subject to palpable error review, which requires that manifest injustice result from the error; presented a "close call" on the issue of recency; and is the largest gap in time found in the applicable case law that still allowed for a finding of recency. *Id.* (collecting cases).

The above presents an issue where, in the absence of other evidence, as is the case here, the affidavit in support of the arrest warrant does not contain adequate temporal facts drawing "a *minimally sufficient nexus* between the illegal activity and [Baker, as the person to be arrested]." *Cf. White*, 874 F.3d at 496-97 (emphasis added) (quoting *Carpenter*, 360 F.3d at 596); *id.* at 498 (requiring "adequate supporting facts") (quoting *Nathanson v. United States*, 290 U.S. 41, 46 (1933)).  Although the affidavit states that the tablet was stolen on April 19, 2015, it contains no facts speaking to whether Baker possessed or otherwise received the property recent in time to its taking.  We do not know when Officer King conducted the interview forming the basis of Baker's arrest warrant and do not know with sufficient certainty when Baker allegedly sold the informant the tablet.  All we know is that a judicial officer signed off on the warrant nearly two years after the theft, on January 24, 2017.  It may very well be the case that Officer King interviewed the informant more than twenty-one months after the tablet was stolen.  On such a record, this Court cannot conclude that there is a sufficient nexus between Baker and the crime of knowingly receiving stolen property, as the facts here allow for the possibility that Baker first possessed or otherwise received the tablet more than fifteen months after it was stolen.  Moreover, there are no other facts to support that Baker received or disposed of the stolen tablet for or at a certain or generalized price, such as a price so below market value that he should have known it was stolen.  *United States v. McCarley*, 70 F. App'x 854, 858 (6th Cir. 2003).  In short, nothing in the affidavit here provides adequate supporting facts that speak to the knowledge requirement contained in the Kentucky Statute.  With no modicum of evidence between the criminal activity of knowingly possessing stolen property and Baker, the only remaining conclusion is that the affidavit is bare bones and suppression is appropriate.

I end by highlighting the dangerous precedent set, not affirmed, by the majority today.  In effect, the majority advocates a position that validates an arrest of a person for knowingly receiving stolen property based on the mere assertion that the person, at some point in time, possessed stolen property.  Under that approach, the majority must concede that the informant here may very well have been subject to arrest for the same offense as Baker, as they possessed or otherwise received stolen property at some point in time immediately after Baker, and the fact of their receipt is more certain than Baker's.  Although the above demonstrates the logical incoherence of the majority's holding, the circumstance presented also demands that this Court

enter a judgment deterring the type of behavior seen by law enforcement here.  Thus, to "compel respect for the constitutional guaranty" of the Fourth Amendment and "prevent" the type of abuse at issue here—reliance on an affidavit so lacking in indicia of probable cause that no reasonable officer would rely on the warrant resulting therefrom—we must suppress the evidence.  *Davis v. United States*, 564 U.S. 229, 236-37 (2011) (quoting *Elkins v. United States*, 364 U.S. 206, 217 (1960).

I dissent.