NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a1160n.06

No. 12-3013

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
*Nov 08, 2012*
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR THE |
| | ) | NORTHERN DISTRICT OF OHIO |
| REMUS E. NEWSOME, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |

Before: SILER, COLE and SUTTON, Circuit Judges.

SUTTON, Circuit Judge.  When Akron, Ohio, police officers arrived at the home of Remus Newsome with an arrest warrant, they expected to detain him for shooting at (and missing) Lawrence Caver.  Yet the officers found more than a shooting suspect; they also found crack cocaine, heroin and a handgun.  The district court denied Newsome's motion to suppress the contraband, and Newsome pled guilty to a firearms and a drug offense.  We vacate the firearms conviction, affirm the drug conviction and remand to the district court for resentencing.

I.

On September 29, 2010, someone got out of a maroon vehicle with tinted windows and fired multiple shots at Lawrence Caver.  Six weeks later, the police found their man:  Caver identified Remus Newsome as the shooter after picking him out of a photo array.  Another witness agreed that Newsome was the shooter and identified him in a photo array as well.  The police also determined

that Newsome owned a maroon 1996 Mercury. Armed with this knowledge, the police obtained an arrest warrant for Newsome from Margaret Bulan, Deputy Clerk of the Akron Municipal Court.

Five Akron police officers went to Newsome's home to make the arrest. Newsome opened the door but slammed it shut as soon as he realized who was there. When the officers started removing the door, Newsome changed his mind and opened the door again, backing into his kitchen. The front door led directly into the kitchen, with the living room to one side and an open hall leading to an open door to the bedroom on the other side. The officers promptly arrested Newsome, and, as they did, they noticed marijuana on the kitchen table. They performed a protective sweep of the remainder of the house, restraining a female in the living room area and noticing a large amount of crack cocaine and heroin on top of a dresser in the bedroom.

After finding the drugs, Officer Russell Bassett left to get a search warrant for the whole house while the others remained at the scene. A judge approved the warrant, and the officers began to search the house. In Newsome's jacket, which was draped across a kitchen chair, they found a .22-caliber handgun, and in the bedroom closet they found a safe. They removed the safe, transported it to the police station and found another gun and more crack cocaine inside.

Federal charges against Newsome came next, followed by Newsome's motion to suppress the drugs and guns. The district court denied the motion with respect to the drugs found in plain view and the gun in his jacket pocket, but the court granted the motion with respect to the drugs and gun found in the safe. Based on the surviving evidence, Newsome pled guilty to being a felon in

possession of a firearm, *see* 18 U.S.C. § 922(g)(1), and to possessing crack cocaine and heroin, *see* 21 U.S.C. §§ 841(a)(1) and (b)(1)(B). The district court imposed concurrent sentences of 120 months for the felon-in-possession conviction and 151 months for the drug-possession conviction.

II.

*Arrest Warrant*. Did probable cause support the arrest warrant? Yes.

Probable cause depends on whether there was "reasonably trustworthy information" showing the defendant committed an offense. *Beck v. Ohio*, 379 U.S. 89, 91 (1964). This is a "practical, nontechnical conception" that weighs evidence "not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement." *Illinois v. Gates*, 462 U.S. 213, 231, 232 (1983). As a result, magistrates may issue arrest warrants based on "nontechnical, common-sense judgments of laymen applying a standard less demanding than those used in more formal legal proceedings," *id*. at 235–36, so long as they have a basis for determining probable cause exists, *United States v. Graham*, 275 F.3d 490, 502 (6th Cir. 2001).

When the police officers asked Deputy Clerk Bulan to issue a warrant for Newsome's arrest, they told her that an unnamed witness had successfully picked Newsome out of a photo array. That by itself normally does the trick. An eyewitness identification alone creates probable cause unless "there is an apparent reason for the officer to believe that the eyewitness was lying, did not accurately describe what he had seen, or was in some fashion mistaken regarding his recollection of the confrontation." *Ahlers v. Schebil*, 188 F.3d 365, 370 (6th Cir. 1999). The evidence in this instance

provided an eyewitness identification of Newsome as the shooter and corroboration through a photo array, and no evidence suggests the witness was mistaken or lying.

Not quite so, says Newsome. The arrest affidavit, to be sure, states that someone identified Newsome as the shooter and that the unidentified person picked Newsome out of a photo array. But it does not say who the person was or whether the person saw Newsome fire at Caver. True enough. But reviewing courts pay great deference to magistrates' probable-cause determinations, *Gates*, 462 U.S. at 236, and may "not invalidate [a] warrant by interpreting [an] affidavit in a hypertechnical, rather than a commonsense, manner," *United States v. Ventresca*, 380 U.S. 102, 109 (1965). The arrest affidavit contained specific details about the shooting—that Newsome pulled up to Caver in a maroon vehicle, that the vehicle had tinted windows, that Newsome exited the vehicle and that Newsome fired multiple shots. Those "detailed observations" confirm that the informant relied on firsthand knowledge, not rumors, of the shooting. *Id*. at 111. The district court correctly held that Bulan was "justified in finding that there was probable cause" to support Newsome's arrest. R. 33 at 6.

The district court went further, concluding that the arrest warrant was invalid under the Ohio Rules of Criminal Procedure because it had no blank line for Bulan to sign. Bulan instead signed the "complaint" section of the document, and in the "warrant" section, she circled "probable cause" and wrote her initials. Nonetheless, the district court rejected the motion to suppress, even on this ground, because the officers acted in good faith in executing it.

We need not consider the validity of the warrant because either way, as the district court correctly found, the officers acted in good faith in executing it. When police rely on an invalid warrant, the good-faith exception bars suppression of the evidence unless "a reasonably well trained officer would have known" that the warrant was defective. *United States v. Leon*, 468 U.S. 897, 922 n.23 (1984). The exception applies with equal force to a defect caused by the "clerical errors of court employees." *Arizona v. Evans*, 514 U.S. 1, 16 (1995); *see also United States v. Watson*, 498 F.3d 429, 433 (6th Cir. 2007) (noting that an officer's "failure to notice a minor deviation" in a warrant "does not evince an absence of good faith"). At the suppression hearing, the detective who obtained Newsome's arrest warrant testified that he thought the warrant was valid. He had obtained similar warrants "hundreds" of times before and had never been told a warrant was invalid because it contained the clerk's initials rather than the clerk's signature. R. 38 at 88. Newsome offers no reason to think a well-trained officer would have realized Akron's warrant procedure was defective, and we cannot think of any ourselves. The district court correctly applied the good-faith exception here.

*Seized Evidence*. Should the seized crack cocaine, heroin and gun be suppressed on the ground that the search warrant was invalid? No for the drugs; yes for the gun.

As a first matter, the officers did not need a warrant to discover drugs in plain view. When police officers make an arrest inside a home, they may, "as a precautionary matter and without probable cause or reasonable suspicion, look in closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched." *Maryland v. Buie*, 494 U.S.

325, 334 (1990). The officers arrested Newsome near his kitchen table, which was adjacent to his bedroom and not separated by any walls. As one of the officers, Russell Bassett, put it, "If you are standing in the kitchen, you can see . . . all the way back to [Newsome's] bedroom." R. 18 at 47. The bedroom was thus a "space immediately adjoining the place of arrest from which an attack could immediately be launched," and the officers required neither a warrant nor reasonable suspicion to enter it. *Buie*, 494 U.S. at 334; *see also United States v. Kaler*, 11 F. App'x 400, 401–02 (6th Cir. 2001) (per curiam) (holding that *Buie* allowed officers to perform a protective sweep of a bathroom that adjoined the place of arrest); *United States v. Thomas*, 429 F.3d 282, 287–88 (D.C. Cir. 2005) ("If an apartment is small enough that all of it immediately adjoin[s] the place of arrest and all of it constitutes a space or spaces from which an attack could be immediately launched, then the entire apartment is subject to a limited sweep of spaces where a person may be found.") (internal quotations omitted).

Once in the bedroom, the officers performed a "cursory inspection of those spaces where a person may be found." *Buie*, 494 U.S. at 335. That inspection revealed crack cocaine and heroin sitting on Newsome's dresser, items that the police could seize based on their "immediately apparent" incriminating character. *Horton v. California*, 496 U.S. 128, 136 (1990).

That the police waited a short while to seize the narcotics until after they obtained a warrant makes no difference. After one of the officers saw the drugs on Newsome's dresser during the protective sweep, Officer Bassett obtained a search warrant out of an abundance of caution while the other officers remained at the house. When he returned, warrant in hand, the police seized the drugs.

Nothing about the delay was improper; police may wait a reasonable amount of time between observing contraband in plain view and seizing it. *Emery v. Holmes*, 824 F.2d 143, 148 (1st Cir. 1987). But even if they could not, the officers had a valid search warrant when they seized Newsome's drugs. Contrary to Newsome's arguments, the warrant described with sufficient particularity the place to be searched (Newsome's home) and the items to be seized (the "illegal drugs" the officers had observed in plain view). *See Berger v. New York*, 388 U.S. 41, 99 (1967) (explaining that a warrant describes items with sufficient particularity if the officer "can, with reasonable effort ascertain and identify the warrant's objects"). The district court properly refused to suppress the drugs.

The same cannot be said for the gun found in Newsome's jacket. It was not in plain view, and as a result the police needed a warrant to search for it. The search warrant mentioned a gun, but it offered no evidence connecting the gun used in the shooting to Newsome's home. The warrant thus permissibly authorized the officers to search for "illegal drugs," namely the drugs in plain view, but not for the gun. To its credit, the government concedes that the exclusionary rule "applies to the firearm." Appellee's Br. at 34.

At first blush, this error might appear harmless. Newsome did not receive additional time in prison due to the firearms conviction because the two sentences will run concurrently and because the drug-related conviction led to the longer sentence. But the error still has consequences for Newsome. For one, it is a felony conviction on his record. For another, a condition of Newsome's supervised release prohibits him from possessing a firearm. For still another, he paid a $100 special

assessment for the firearms count.  We thus vacate Newsome's felon-in-possession conviction and

make a limited remand to the district court to resentence Newsome.

## III.

For these reasons, we vacate Newsome's conviction on Count One, affirm it on Count Two

and remand the case for the limited purpose of readjusting the sentence.