NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0122n.06

Case No. 19-4244

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

<table>
<tr><td>UNITED STATES OF AMERICA,</td><td>)</td><td rowspan="11"><strong>FILED</strong><br>Mar 09, 2021<br>DEBORAH S. HUNT, Clerk</td></tr>
<tr><td>    Plaintiff-Appellee,</td><td>)</td></tr>
<tr><td></td><td>)</td></tr>
<tr><td>v.</td><td>)</td></tr>
<tr><td></td><td>)</td></tr>
<tr><td>TYRONE CAMMON,</td><td>)</td></tr>
<tr><td></td><td>)</td></tr>
<tr><td>    Defendant-Appellant.</td><td>)</td></tr>
<tr><td></td><td>)</td></tr>
</table>

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO

BEFORE: MOORE, ROGERS, and READLER, Circuit Judges.

**CHAD A. READLER, Circuit Judge.** With the backing of an arrest warrant, officers apprehended Tyrone Cammon in his sister's apartment. A protective sweep of the apartment revealed evidence of drug trafficking as well as two handguns. Cammon contends that the officers' search was unreasonable under the Fourth Amendment, and that the admission of a confidential informant's out-of-court statement at Cammon's subsequent trial violated his Sixth Amendment Confrontation Clause rights. The district court rejected those arguments, and the jury returned a verdict convicting Cammon of various federal offenses. We now affirm.

I.

While on patrol, officers in Cleveland stopped Tyrone Cammon for making a left turn without using his turn signal and having extremely dark tinted windows for his vehicle. Rather than engage with the officers, Cammon fled his vehicle on foot in an attempt to escape the scene.

He was eventually detained. A search of Cammon and his vehicle uncovered a handgun and distribution-packaged doses of fentanyl, a scale, three cell phones, and $500 cash. While Cammon was being held in jail, officers connected the handgun to an earlier shooting at a Cleveland gas station. Nonetheless, Cammon was eventually released on bond. But when Cammon failed to appear for a subsequent court proceeding, a state judge issued a warrant for his arrest.

The U.S. Marshals Service received a tip that Cammon was hiding out at his sister's apartment. Officers began surveilling the apartment building. After several hours, they observed an individual whom they believed to be Cammon exit the building, jog to a parked car, retrieve a bag, and then reenter the building. Officers followed Cammon into the building to execute the arrest warrant. They knocked on the door of his sister's apartment and announced their presence. Upon receiving no answer, yet hearing a toilet flush, officers entered the apartment on the suspicion that Cammon was destroying evidence.

Officers discovered Cammon in the kitchen with his clothing covered in a white powdery substance. An unknown woman was in the living room, and drugs and related paraphernalia were in plain view throughout the apartment. Officers handcuffed Cammon and commenced a protective sweep of the residence. In an adjoining bedroom, officers noticed a handgun "sticking up out of . . . clothing" in an open plastic container in a doorless closet. Officers also found another handgun stashed between the mattress and box spring. Within a few hours, officers obtained and executed a search warrant for the apartment. While executing the warrant, officers seized distribution quantities of fentanyl, heroin, and fentanyl analogues, along with other drug-distribution paraphernalia.

A seven-count federal indictment followed. Before trial, Cammon moved to suppress the contraband seized from the traffic stop and inside the apartment. As to the search of the apartment,

Cammon argued that officers exceeded the permissible scope of a protective sweep under the Fourth Amendment by seizing drugs and guns at the time of his arrest. The district court denied each of Cammon's challenges. During trial, Cammon raised a Sixth Amendment objection to the admission of a testimonial out-of-court statement by a confidential informant linking Cammon to a handgun in a separate incident. The district court, however, overruled the objection. After a three-day trial, the jury acquitted Cammon on a felon-in-possession-of-firearm charge related to the gas station shooting but convicted him on six firearm and possession-with-intent-to-distribute fentanyl and heroin charges. This timely appeal followed.

II.

On appeal, Cammon maintains that officers violated the Fourth Amendment both by entering his sister's apartment to execute his arrest warrant, and by seizing two firearms during a protective sweep incident to Cammon's arrest. The district court rejected those arguments and declined to suppress the evidence. We review the district court's factual findings under a clear error standard and its legal conclusions de novo. *United States v. Gilbert*, 952 F.3d 759, 762 (6th Cir. 2020). In this posture, we consider evidence presented both at trial and at the suppression hearing, viewing the evidentiary record in the light most favorable to the government. *United States v. Gill*, 685 F.3d 606, 609 (6th Cir. 2012).

1. The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. amend. IV. In assessing Cammon's Fourth Amendment challenge to the search of his sister's apartment, we note at the outset the significance of a warrant in determining whether this search was "unreasonable." "[P]hysical entry of the home" is the "chief evil against which the wording of the Fourth Amendment is directed." *United States v. U.S. Dist. Ct.*, 407 U.S. 297, 313 (1972).

3

It follows that, absent consent or exigent circumstances, entry into a home to conduct a search or make an arrest is unreasonable without a warrant. *Steagald v. United States*, 451 U.S. 204, 213 & n.7 (1981). By the same token, "[a]s with searches, courts more often will deem seizures reasonable when they are associated with a warrant." *Graves v. Mahoning County*, 821 F.3d 772, 777 (6th Cir. 2016). That is so in part because securing a warrant "subject[s] the probable-cause determination of the police to judicial review." *Steagald*, 451 U.S. at 212–13 (noting that the special Fourth Amendment protection afforded to the home typically requires more than "judicially untested determinations" of probable cause).

As Cammon emphasizes, officers did not obtain a search warrant for his sister's residence. But officers did possess a valid *arrest* warrant, which afforded those officers "the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within." *Payton v. New York*, 445 U.S. 573, 603 (1980). It is generally understood that *Payton*'s reach extends beyond "a dwelling in which the suspect lives" to the dwellings of relevant third parties, so long as officers have a warrant for a suspect's arrest and a reason to believe the suspect is inside. *United States v. Pruitt*, 458 F.3d 477, 482 (6th Cir. 2006). In defining *Payton*'s "reason to believe" standard, however, we have at times vacillated between a "probable cause" and a lesser "reasonable belief" standard to define whether an officer fairly had "reason to believe the suspect is within [the dwelling]." *United States v. Baker*, 976 F.3d 636, 642 (6th Cir. 2020) (collecting cases). We need not further that debate here, as Cammon does not seriously dispute that officers "were aware that [he] was in his sister's apartment," given that surveillance confirmed Cammon's presence. The officers, in other words, were entitled to enter the apartment to execute the arrest warrant under either standard.

Even then, says Cammon, the search was unreasonable in that the officers should have detained Cammon outside the apartment, when they first spotted him retrieving clothing from a car. Because Cammon makes this argument for the first time on appeal, it is subject to plain error review. *United States v. Calvetti*, 836 F.3d 654, 664 (6th Cir. 2016). Officers saw an individual appearing to be Cammon outside, near a car. Although officers were "pretty positive" the man was Cammon, there was some doubt. And by the time they confirmed his identity, Cammon had reentered the building. Under these circumstances, it was not unreasonable for officers to exhibit the momentary caution necessary to make a positive identification before arresting Cammon.

True, as Cammon notes, the First Circuit once suppressed fruits of a search when officers deliberately delayed the execution of an arrest warrant in pursuit of incriminating evidence. *See United States v. Curzi*, 867 F.2d 36, 41 (1st Cir. 1989). But in *Curzi*, the search was deemed unreasonable only after federal agents admitted making the "tactical choice" to trail the suspect for days, intentionally passing up several "golden opportun[ities]" to make a safe arrest, later arresting the suspect in his home where officers hoped to seize evidence without a search warrant. *Id.* at 40. The "uncontested evidence" in *Curzi* showed that "law enforcement personnel planned, well ahead of time, to order not just [the suspect] but all the occupants of the dwelling to exit, and then to conduct the protective sweep, come what might." *Id.* The extreme conduct there does not resemble that here.

2. Cammon contends that, even if the officers' initial entry into the apartment was lawful, the scope of their protective sweep exceeded constitutional parameters. By way of background, in recognition of the risks attendant to performing an in-home arrest, the Fourth Amendment authorizes officers to conduct a limited protective sweep of the premises to ensure officer safety. *Maryland v. Buie*, 494 U.S. 325, 333 (1990). *Buie* recognized two types of protective sweeps

associated with an in-home arrest—one more expansive than the other, but both constituting a search more circumscribed than a search warrant would allow. *Id.* at 334; *see also United States v. Archibald*, 589 F.3d 289, 295 (6th Cir. 2009); *United States v. Cousins*, --- F. App'x ---, 2021 WL 164687, at \*9 (6th Cir. Jan. 19, 2021). As a "precautionary matter" and "without probable cause or reasonable suspicion," officers may "look in closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched." *Buie*, 494 U.S. at 334. If officers seek to extend their search "[b]eyond" that cabined scope, there must be "articulable facts" together with "rational inferences" that would "warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene." *Id.* This latter type of sweep is "not a full search of the premises"; it extends "only to a cursory inspection of those spaces where a person may be found." *Id.* at 335. In both instances, an officer may seize contraband found in plain view if its incriminating character is immediately apparent. *Horton v. California*, 496 U.S. 128, 136 (1990).

With this legal backdrop in mind, we turn to the search at issue here. As part of their protective sweep, officers discovered two handguns in a bedroom adjacent to the scene of Cammon's arrest: an extended magazine Glock pistol "sticking up" from an open box in the bedroom's doorless closet, and another Glock pistol wedged between the mattress and box spring. Starting with the officers' seizure of the handgun in the bedroom closet, that seizure falls under the first and more permissive category of *Buie* sweeps. When officers entered the apartment, they found Cammon in the kitchen. According to an officer, the apartment was a "very small" "efficiency" unit with close proximity between the four adjoining rooms: a bathroom, a bedroom, a kitchen, and a living room. Because *Buie* grants officers the right to automatically inspect "spaces immediately adjoining" the place of arrest "from which an attack could be immediately

6

launched," officers were entitled to conduct a protective sweep of the adjoining bedroom and seize any contraband found in plain view. *See, e.g.*, *United States v. Newsome*, 504 F. App'x 463, 466 (6th Cir. 2012) (holding that *Buie* allowed officers to search an adjoining bedroom as a "space immediately adjoining the place of arrest" in the kitchen). Cammon presents no compelling arguments to the contrary.

Whether the seizure of the handgun found between the mattress and box spring is justified by *Buie* presents a closer question. *Cf. United States v. Lanier*, 285 F. App'x 239, 241 (6th Cir. 2008). Given its size, arguably the entire apartment constituted an "immediately adjoining" space. *See United States v. Thomas*, 429 F.3d 282, 287–88 (D.C. Cir. 2005) ("If an apartment is small enough that all of it 'immediately adjoin[s] the place of arrest' and all of it constitutes a space or spaces 'from which an attack could be immediately launched,' then the entire apartment is subject to a limited sweep of spaces where a person may be found." (internal citation omitted)). But whether an "attack could be immediately launched" from between the mattress and the box spring is debatable. An officer testified at the suppression hearing that suspects can hide between the mattress and the box spring. The question here, however, is not merely whether the space between a mattress and a box spring poses a viable location for a suspect to hide, but also whether it is a place from which an "attack could immediately be launched." *Buie*, 494 U.S. at 334. In a short ruling from the bench, the district court treated as dispositive the testifying officer's belief that a suspect could hide beneath a mattress:

> [T]his officer, I've heard a lot of testimony in my career, I've heard him a couple times, but he seemed pretty firm that on a bed, even though if the layman would look at this bed and say nobody would hide in there, I mean, that's probably what I would think, but thank goodness I'm not a policeman going in and making arrests, because they have experience, and he said he's seen it before.

And so, that was a protective sweep. There's no problem with that.

That conclusion leaves it unclear whether the district court made the related determination that an attack could be launched from between the mattress and the box spring.

Regardless of how one might read the underlying testimony and resulting determination by the district court, we can affirm on the alternative conclusion reached by the district court, namely, that even if an unlawful search occurred, the seizure of the second handgun falls within the inevitable discovery exception to the exclusionary rule. That exception allows for the admission of evidence obtained through unlawful means if such evidence "ultimately or inevitably would have been discovered by lawful means." *Nix v. Williams*, 467 U.S. 431, 444 (1984). Assessing the matter from a vantagepoint before the unlawful search, we ask whether the government can show by a preponderance of the evidence that the unlawfully obtained evidence would have been discovered by a later lawful search. *Id.*; *United States v. Alexander*, 540 F.3d 494, 502 (6th Cir. 2008). Here, the answer is yes. Other lawfully found contraband provided the government with the probable cause necessary for a search warrant—namely, that Cammon was found in an apartment with narcotics, drug paraphernalia, and another handgun in plain view while his clothing was "covered in white powder residue" suspected to be drugs. That contraband would have independently prompted a search warrant, and the district court credited officer testimony that officers would have invariably searched between the mattress and the box spring and found the handgun anyway. *See United States v. Lewis*, 615 F. App'x 332, 338–39 (6th Cir. 2015) (finding a suppression challenge to be "without merit" where "incriminating evidence would have been found after the warrant was issued and a full-scale search [of the premises] conducted"). We thus decline to disturb the judgment of the district court.

8

III.

Cammon also asserts that his Sixth Amendment Confrontation Clause rights were violated when the district court, over Cammon's objection, admitted testimony that a confidential informant bought heroin from Cammon while Cammon had a handgun in the car. The familiar language of the Confrontation Clause instructs that in a criminal case, "the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. CONST. amend. VI. In practice, the Clause bars the admission of testimonial, out-of-court statements of an unavailable declarant offered to prove the truth of the matter asserted, unless the defendant has had a prior opportunity to cross-examine the declarant. *Crawford v. Washington*, 541 U.S. 36, 59 (2004).

Invoking the Sixth Amendment, Cammon challenges an out-of-court statement from a confidential informant linking Cammon to a handgun. Cammon's counsel cross-examined an officer regarding a previous controlled drug buy involving Cammon and a confidential informant. Although prosecutors never charged Cammon for the buy, defense counsel probed why investigators included it in an affidavit accompanying the request for a search warrant. On the subsequent redirect examination, the prosecutor inquired about the circumstances of that prior transaction:

> **Q:** Detective Comerford, . . . [c]ould you please tell us the circumstances surrounding that controlled purchase by an informant of drugs for Mr. Cammon?
>
> **A:** A controlled phone call was made, and they were directed to call Mr. Cammon's phone—
>
> ****
>
> Once the phone call was made, a deal was made to purchase heroin at a predetermined meeting location. And once at that location, Mr. Cammon arrived driving a silver Jeep. At that time, the narcotics transaction was completed.
>
> During the transaction, *the confidential source said they did observe a black handgun sitting in Mr. Cammon's lap during the deal.*

Cammon contends both that the informant's statement was testimonial and that the informant was never able to be cross-examined, meaning admitting the statement at issue ran afoul of the Sixth Amendment.

We need not resolve the Sixth Amendment question today. After all, even if a violation occurred, Cammon is not entitled to relief unless the violation amounts to more than harmless error. *United States v. McGee*, 529 F.3d 691, 697 (6th Cir. 2008). We have routinely held that the admission of past criminal activity is harmless where other evidence against the defendant is overwhelming. *See, e.g.*, *United States v. Powers*, 500 F.3d 500, 510–11 (6th Cir. 2007); *United States v. Savoires*, 430 F.3d 376, 382 (6th Cir. 2005); *United States v. Parsons*, 798 F. App'x 922, 926 (6th Cir. 2020). Here, "substantial evidence apart from" the challenged statement supported the verdict, most notably, the firearms and narcotics seized in Cammon's possession. *United States v. Henderson*, 626 F.3d 326, 334 (6th Cir. 2010). When considering Cammon's claims against the entire body of evidence, we conclude that any error was harmless.

IV.

For the foregoing reasons, we affirm the judgment of the district court.