NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0142n.06

No. 21-3524

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | **FILED**<br>Apr 04, 2022<br>DEBORAH S. HUNT, Clerk |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE SOUTHERN DISTRICT OF |
| CHRISTOPHER LEE BRYANT, | ) | OHIO |
| | ) | |
| Defendant-Appellant. | ) | |

Before: SILER, CLAY, and MURPHY, Circuit Judges.

MURPHY, Circuit Judge. After a police officer received tips from Discord, an online app, that an accountholder had uploaded child pornography, the officer obtained a warrant to search the accountholder's home. The search uncovered substantial child pornography. The accountholder then turned into an informant, asserting that he had obtained sexually explicit images of a four-year-old girl from a user that went by AkiHaru#5042. The officer thus obtained a warrant to compel Discord to provide information about this account. That warrant led law enforcement to the defendant in this case, Christopher Bryant, who ultimately pleaded guilty to a child-pornography offense. On appeal, Bryant argues that the informant's tip did not establish the probable cause necessary to obtain a warrant for his Discord records. Yet the officer's affidavit in support of that warrant identified this informant by name and described the informant's direct

knowledge of AkiHaru#5042's crime. Because the affidavit sufficed to establish probable cause under our caselaw, we affirm Bryant's conviction.

I

The events that led to Bryant's conviction in Ohio began across the country with a separate investigation in La Habra, California. In late 2019, the National Center for Missing and Exploited Children sent several "CyberTips" about child pornography on the internet to a La Habra police officer. The tips had originated from Discord, which operates an internet app that allows accountholders to exchange text messages, images, and video in a "chat channel." Although Discord primarily serves video gamers, people who possess child pornography also use the app to distribute illegal images. The CyberTips revealed that an accountholder with a specific IP address in La Habra had uploaded sexually explicit images of young girls onto Discord. Acting on these tips, the La Habra officer obtained a warrant compelling an internet service provider to turn over the subscriber information for the identified IP address. The officer also obtained warrants for Google and Yahoo to produce information from the email addresses connected to the relevant Discord account. The internet service provider's records showed that the IP address was registered to a La Habra apartment at which a man named Phineas Cozmiuc lived. Cozmiuc's name also closely matched the name in the suspected email addresses.

The La Habra officer used this information to obtain a warrant to search Cozmiuc's apartment. During the search, Cozmiuc confessed to possessing over a hundred images of child pornography and gave the officer the password to his computer. The officer found the illegal images on this device and asked Cozmiuc to sit for an interview. Cozmiuc agreed. When questioned if he had received child pornography from anyone actively abusing children, Cozmiuc noted that a suspected female had been sending him explicit images of a four-year-old girl.

The two had met on Discord in the last couple of months but had switched to communicating on Wickr, an encrypted platform that can automatically delete conversations. Cozmiuc logged into his Discord account and showed the officer this suspect's username: AkiHaru#5042.

The officer asked a California judge for a warrant that would require Discord to disclose AkiHaru#5042's account information and communications with others in the Discord app. The judge issued the warrant. Discord's records (along with additional police work) revealed that this Discord account actually belonged to Bryant, not the female adult that Cozmiuc had suspected. Bryant's driver's license listed his residence as an apartment in Springfield, Ohio. The La Habra officer thus handed over the investigation to federal law enforcement in that state.

Federal officers continued with the investigation. Through surveillance of Bryant and conversations with his employer, they learned that the apartment listed on his driver's license belonged to a different couple. This couple had been allowing Bryant to stay with them and their children, including their four-year-old daughter. Yet the officers also learned that Bryant had recently moved to another apartment in Springfield.

They obtained a search warrant for this new apartment. The search uncovered hundreds of child-pornography images and videos on Bryant's phones and flash drives. After the search, Bryant confessed to using the AkiHaru#5042 account and posing as a female to discuss child pornography with Cozmiuc. He also confessed that he regularly took sexually explicit images of his friend's four-year-old daughter when he babysat her. All told, Bryant created some 116 illegal images of this small child and circulated some of these images to others, including Cozmiuc.

The government charged Bryant with violating several child-pornography statutes, including 18 U.S.C. § 2251(a). Section 2251(a) prohibited Bryant from persuading a minor to engage in sexually explicit conduct in order to produce a visual depiction of the conduct. In

3

response to the charges, Bryant moved to suppress all evidence derived from the La Habra officer's Discord warrant seeking information for AkiHaru#5042. Bryant claimed that the officer lacked probable cause that this Discord account had been used in criminal activity. He also requested an evidentiary hearing over whether the officer had included false information in the affidavit seeking the warrant. The district court denied his motion, finding that probable cause supported the warrant and that the allegedly false statements did not alter that conclusion.

Bryant later pleaded guilty to violating 18 U.S.C. § 2251(a). The court sentenced him to 330 months' imprisonment. Bryant's plea agreement reserved the right to challenge the district court's decision denying his motion to suppress. He now appeals this suppression order.

II

The parties do not dispute (and so we can take as a given on appeal) that the La Habra officer needed a warrant to obtain information from Discord about the AkiHaru#5042 account. *Cf. Carpenter v. United States*, 138 S. Ct. 2206, 2221–23 (2018). But they disagree over whether this officer's affidavit created the "probable cause" necessary for such a warrant under the Fourth Amendment. U.S. Const. amend. IV. Although we review the district court's probable-cause ruling de novo, we give "great deference" to the California judge's original conclusion that probable cause justified issuance of the warrant. *United States v. Sheckles*, 996 F.3d 330, 337–38 (6th Cir. 2021) (citation omitted).

Probable cause "is not a high bar." *District of Columbia v. Wesby*, 138 S. Ct. 577, 586 (2018) (citation omitted). The general probable-cause test requires an officer to establish only a "'fair probability' of criminal activity" based on the totality of the circumstances listed in the officer's affidavit. *Sheckles*, 996 F.3d at 337 (citation omitted). Yet courts apply more specific tests depending on what the police seek to accomplish with the warrant. *See United States v.*

4

*Baker*, 976 F.3d 636, 645 (6th Cir. 2020). Probable cause to *arrest* a suspect, for example, requires a fair probability that the suspect has committed a crime, whereas probable cause to *search* a home for illegal drugs requires a fair probability that the home will contain the drugs. *See id.* at 645–46.

Here, the La Habra officer sought a warrant to compel Discord to disclose the following information for the AkiHaru#5042 account: "the IP address, device ID, username, email addresses, messages, images, transient [voice] data, and other content sent using chat features." Aff., R.25-1, PageID 100. The officer sought this information for two basic reasons. He asserted that the information might include confiscable child pornography. *See id.* This suggestion required the officer to show a fair probability that the account would contain the illegal contraband. *Cf. United States v. Lapsins*, 570 F.3d 758, 766–67 (6th Cir. 2009); *United States v. Terry*, 522 F.3d 645, 648–49 (6th Cir. 2008). The officer also asserted that the records might identify an unknown person suspected of abusing a four-year-old girl and contain other evidence relevant to proving the alleged abuse. *See* Aff., R.25-1, PageID 100, 103. This suggestion required the officer to show a fair probability that the evidence would "aid in a particular apprehension or conviction." *Warden v. Hayden*, 387 U.S. 294, 307 (1967); *cf. Sheckles*, 996 F.3d at 338.

What did the officer put in his affidavit to establish a fair probability of these things? He sought to prove probable cause primarily through Cozmiuc's statements about the AkiHaru#5042 account. The officer's affidavit detailed the investigation leading up to the search of Cozmiuc's apartment and Cozmiuc's confession to possessing child pornography. Aff., R.25-1, PageID 102–03. The affidavit next noted that the officer had personally confirmed that Cozmiuc's computer contained child pornography. *Id.*, PageID 103. It also summarized the officer's interview with Cozmiuc. Cozmiuc had confessed that a suspected female had been sending him sexually explicit images of a four-year-old girl who may have been the victim of ongoing abuse. *Id.* Cozmiuc

described his prior conversations with this suspect. *Id.* He also logged on to his Discord account in the officer's presence and identified the suspect's username (AkiHaru#5042) and user ID. *Id.*

Under our caselaw, this information created a fair probability that the requested Discord records for AkiHaru#5042 contained child pornography or other evidence of a crime. If an officer's affidavit seeks to show probable cause using hearsay statements from an informant like Cozmiuc, our precedent tells us to consider both the informant's reliability ("is the informant sufficiently trustworthy?") and the informant's basis of knowledge ("how did the informant learn about the criminal activity?"). *United States v. Bell*, 2022 WL 59619, at *2 (6th Cir. Jan. 6, 2022) (citing *Illinois v. Gates*, 462 U.S. 213, 228–30, 229 nn.4–6 (1983)). We balance these factors together, meaning that a stronger showing of one factor can make up for a weaker showing of the other under the totality-of-the-circumstances test. *See id.* at *3.

Critically for present purposes, we have repeatedly found probable cause using these factors when officers both identified informants by name in their affidavits and explained that the informants had indicated that they had seen a crime firsthand. *See, e.g.*, *United States v. Woods*, 858 F. App'x 868, 870–72 (6th Cir. 2021); *United States v. Hodge*, 714 F.3d 380, 384–85 (6th Cir. 2013); *United States v. Kinison*, 710 F.3d 678, 682–83 (6th Cir. 2013); *United States v. Miller*, 314 F.3d 265, 270 (6th Cir. 2002); *United States v. Allen*, 211 F.3d 970, 976 (6th Cir. 2000) (en banc); *United States v. Pelham*, 801 F.2d 875, 878 (6th Cir. 1986). According to our caselaw, affidavits of this sort generally establish an informant's reliability and basis of knowledge.

As for reliability, an officer's decision to name an individual in the affidavit distinguishes that person from an unnamed confidential informant or an anonymous source. *See, e.g.*, *Woods*, 858 F. App'x at 870; *Kinison*, 710 F.3d at 682–83; *Miller*, 314 F.3d at 270; *Allen*, 211 F.3d at 976; *Pelham*, 801 F.2d at 878. Known and named informants generally risk criminal liability if they

lie to police officers about a crime. *See Miller*, 314 F.3d at 270. So we view their statements as presumptively reliable for probable-cause purposes even if an affidavit does not include many other corroborating details about their trustworthiness (such as their previous history with the police). *See Woods*, 858 F. App'x at 870.

As for basis of knowledge, an informant's "eyewitness" account about criminal conduct distinguishes that informant from those who regurgitate facts learned from others or who simply fail to disclose how they came to know the recounted facts. *See, e.g.*, *Woods*, 858 F. App'x at 870; *Ahlers v. Schebil*, 188 F.3d 365, 370 (6th Cir. 1999); *cf. United States v. Howard*, 632 F. App'x 795, 802–04 (6th Cir. 2015); *United States v. Smith*, 182 F.3d 473, 481–82 (6th Cir. 1999). Practically speaking, there can be no firmer foundation for an informant's knowledge of a crime than the informant's "direct viewing" of the crime. *Pelham*, 801 F.2d at 878. So we also view an eyewitness's report of a crime as presumptively adequate to create a fair probability that the crime occurred. *See Ahlers*, 188 F.3d at 370.

*Pelham* provides perhaps the first example of this general rule. There, officers arrested an informant found with pounds of marijuana in his truck. 801 F.2d at 876. When asked where he had obtained the drugs, this informant said that he had picked them up at a specific address at which James Pelham lived. *Id.* An officer sought a warrant for Pelham's home based on the informant's statements, including that the informant had recently been in the home and seen Pelham storing marijuana. *Id.* We held that this affidavit sufficed to establish probable cause to search the home. *Id.* at 878. The informant's willingness "to be named in the affidavit" showed his reliability, and his viewing of the illegal drugs firsthand showed his basis of knowledge. *Id.*

This case is a virtual cousin of *Pelham*. Here, as there, officers discovered an individual with illegal contraband in his possession (whether drugs or child pornography). The informants

7

in both cases were asked about sources of the contraband, and they implicated a second suspect in response (whether by identifying the suspect's physical address or by identifying the suspect's internet account). The officers' affidavits in both cases expressly named the informants, who had subjected themselves to potential criminal liability if they had lied to the police about the other suspects' crimes. *See* Cal. Penal Code § 148.5(a)–(b); *Navarette v. California*, 572 U.S. 393, 400–01 (2014). The affidavits in both cases also described the informants' bases of knowledge. The informant in *Pelham* had seen the drugs in the suspect's home; the informant in this case had seen the child pornography in the suspect's online communications. *Pelham* thus controls here.

If anything, other information listed in the affidavit further bolstered Cozmiuc's reliability and basis of knowledge. For one thing, Cozmiuc's statement about receiving child pornography from AkiHaru#5042 also implicated him in criminal liability. After all, it is just as illegal to knowingly *receive* child pornography as it is to knowingly *send* it. *See* 18 U.S.C. § 2252(a)(2). That Cozmiuc's statements were against his penal interest made them more reliable. *See Kinison*, 710 F.3d at 683; *see also United States v. Harris*, 403 U.S. 573, 583–84 (1971) (plurality opinion); *cf.* Fed. R. Evid. 804(b)(3). For another thing, physical evidence corroborated Cozmiuc's statements. Cozmiuc did not simply identify AkiHaru#5042 from memory. Cozmiuc "logged into his Discord account in front of [the officer] and showed [him] the profile name for" the person who sent the child pornography. Aff., R.25-1, PageID 103. This corroborating evidence reduced the possibility that Cozmiuc had simply made up a story about the other Discord account he had implicated in a crime. And, of course, the officer had just found many images of child pornography on Cozmiuc's computer, including images of young girls like the ones that Cozmiuc described receiving from AkiHaru#5042. This physical evidence further corroborated that Cozmiuc had been actively involved in similar child-pornography crimes. In sum, this case fits comfortably

within our precedent that permits a judge to find probable cause when a named informant provides detailed statements about witnessing and participating in a crime.

In response, Bryant argues that this general rule should not apply here because Cozmiuc was "unknown" to the La Habra officer until his arrest. Bryant misunderstands what the relevant caselaw means by "unknown" sources. That adjective typically refers to informants who provide *anonymous* tips—such as, for example, callers who leave voice messages with the police about a crime but who do not otherwise identify themselves. *See, e.g.*, *Navarette*, 572 U.S. at 397; *Florida v. J.L.*, 529 U.S. 266, 270 (2000). Courts require extra corroboration for these types of informants because they have unknown reputations and motives and because they cannot be held to account if they provide false information. *See J.L.*, 529 U.S. at 270.

Yet, unlike the anonymous tipster in *J.L.*, Cozmiuc was known to the La Habra officer and even identified in the affidavit. We have repeatedly recognized that "naming the informant to the magistrate" is "an indicia of reliability," even if the affidavit does not identify the informant's prior history with the police. *United States v. Abdalla*, 972 F.3d 838, 849 (6th Cir. 2020); *Woods*, 858 F. App'x at 870. *Pelham* confirms this point. The affidavit in that case gave no indication that the police had previously worked with the informant before they discovered marijuana in his truck. 801 F.2d at 876. But we did not treat this individual as an anonymous or unknown source. *Id.* at 878. And although Bryant suggests that *Pelham* has been superseded by recent caselaw, we have adhered to its logic in the past year. *See, e.g.*, *Woods*, 858 F. App'x at 871. The cases that Bryant cites to sidestep *Pelham*, by contrast, involved anonymous sources or confidential informants, not individuals like Cozmiuc who were identified in the affidavit. *See, e.g.*, *J.L.*, 529 U.S. at 270; *United States v. Moore*, 999 F.3d 993, 997 (6th Cir. 2021).

9

Bryant also suggests that a probable-cause finding in this case would allow informants to implicate the online accounts of famous politicians or actors with little corroboration so long as the informants are willing to be named in the affidavit. Perhaps so. As the government recognized at oral argument, we must neutrally apply the same probable-cause test no matter the suspect. But these hypothetical informants could face criminal liability if it turns out that they gave false information, which is why we have generally found them reliable for probable-cause purposes. *See Miller*, 314 F.3d at 270. And the totality of the circumstances still governs the probable-cause analysis. So if *other* evidence suggests that an informant had a motive to lie—say, because the informant merely wanted to harass a member of the opposing political party—that factor could play into whether probable cause existed to search an online account. *See Ahlers*, 188 F.3d at 370. In this case, however, Bryant identifies no evidence to suggest that Cozmiuc had ulterior motives to implicate AkiHaru#5042 in a crime.

Bryant lastly asserts that the La Habra officer's affidavit in support of the warrant contained false information, which required the district court to hold an evidentiary hearing under the framework established by the Supreme Court in *Franks v. Delaware*, 438 U.S. 154 (1978). In particular, the affidavit to obtain AkiHaru#5042's Discord records included a statement that referred to an earlier warrant in the investigation: "This is an addendum to the already granted search warrant; which your affiant has attached as an item of reference for the court's review." Aff., R.25-1, PageID 101. Bryant argues that the request for AkiHaru#5042's records was not an "addendum" to any prior warrant because the new warrant involved a different suspect.

This claim did not necessitate a *Franks* hearing. Under *Franks*, a defendant may obtain a hearing to challenge a search warrant by making a preliminary showing of two things: that the officer who requested the warrant knowingly or recklessly included false statements in a

supporting affidavit and that probable cause would not have existed without the allegedly false statements. *See* 438 U.S. at 171–72; *United States v. Bateman*, 945 F.3d 997, 1009 (6th Cir. 2019). Here, it is not clear that the La Habra officer's ambiguous "addendum" statement, when read in the context of the entire affidavit, meant to convey anything other than that the requested warrant flowed out of information obtained from a previous one. But we need not resolve whether this statement conveyed a knowing or reckless falsehood. For the reasons that we have explained, the affidavit contained "sufficient" additional "content" "to support a finding of probable cause" without the challenged statement. *Franks*, 438 U.S. at 172; *see Bateman*, 945 F.3d at 1010. So the statement was immaterial to the probable-cause finding.

    We affirm.