NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0174n.06

Case No. 21-5745

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
Apr 26, 2022
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE WESTERN |
| KRISTOPHER LEE WASHINGTON, | ) | DISTRICT OF KENTUCKY |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | O P I N I O N |

Before: COLE, BUSH, and NALBANDIAN, Circuit Judges.

COLE, Circuit Judge. Kristopher Lee Washington was indicted for (1) conspiracy to possess with intent to distribute and (2) possession with intent to distribute methamphetamine in November 2019. After he unsuccessfully moved to suppress the evidence against him, Washington pleaded guilty to both charges in April 2021. As part of his plea agreement, he reserved the right to appeal the district court's denial of his motion to suppress. On appeal, Washington argues that officers lacked probable cause to arrest him or search his car, and that his statements to police after his arrest were involuntary. After concluding the officers had probable cause and Washington's statements to police were freely given, we affirm.

## I. BACKGROUND

**A. Factual Background**

On June 4, 2019, three individuals—Jasmine Seay, Jerod Belcher, and Jerry Tynes—were arrested after a controlled buy. During Belcher's interview with police, he confessed that, earlier that morning, he had sold one pound of methamphetamine to Washington in Room 202 of the Super 8 Motel in Central City, Kentucky. Belcher described Washington as a Black man who normally drove a black BMW with Indiana license plates. He explained to officers that he had purchased methamphetamine from Washington before and that he was supposed to buy another pound of methamphetamine from him for $3,200. Belcher agreed to cooperate with officers and contacted Washington to coordinate another buy at Room 202 of the Super 8 Motel later that night.

Before Washington was scheduled to arrive at the Super 8 Motel, officers endeavored to corroborate the information Belcher had provided them. They reviewed surveillance footage of a June 4 meeting between Seay, Belcher, Tynes, and an unknown Black man. After securing Washington's driver's license information, they confirmed the unknown man in the video was Washington.

As the time of the buy approached, Belcher continued to communicate with Washington and relayed the details of their correspondence to police. Based on that information, officers at the Super 8 Motel were advised that Washington would be driving a black BMW with Indiana plates and would have a female passenger with him. Sure enough, Washington arrived at the motel in his black BMW with a white female companion just after midnight on June 5, 2019. The two were arrested after knocking on the door to Room 202.

Officers detained Washington in Room 202. While he was detained, officers conducted a search of Washington's BMW using a certified police dog. The dog alerted to narcotics at the

driver's side door.  Following that alert, two officers searched the inside of Washington's vehicle and found one pound of methamphetamine in the glove box and other controlled substances in the center console.

With the drugs secured, officers Mirandized Washington and began to question him. Washington confessed that he had drugs in his car, specifically marijuana and methamphetamine. At the suppression hearing, interviewing officers testified that Washington was mostly cooperative during the interview and appeared alert, despite the fact that he was under the influence at the time.

**B.  Procedural Posture**

Months later, a grand jury indicted Washington with (1) conspiring with Belcher, Seay, and Tynes to intentionally possess and distribute 50 grams or more of methamphetamine and (2) knowingly and intentionally possessing with intent to distribute 50 grams or more of methamphetamine.  Washington then moved to suppress the evidence obtained from the search of his person and his car, as well as the statements he had made during his interview in the motel room.  After an evidentiary hearing, the district court denied his motion.  *See United States v. Washington*, No. 5:19-cr-61, 2020 WL 7389745, at *1 (W.D. Ky. Dec. 16, 2020).  First, the district court concluded Washington's arrest was supported by probable cause because, at the time of his arrest, officers had reliable information connecting Washington with the sale of methamphetamine. *Id.* at *3–5.  The court then concluded the search of Washington's vehicle was also supported by probable cause and so the automobile exception excused the need for a warrant.  *Id.* at *5–6. Finally—and after listening to the recording of Washington's interview—the court determined Washington's statements to officers were made voluntarily because he appeared lucid throughout the interview, and he was properly Mirandized before questioning began.  *Id.* at *7.  Accordingly, the court denied his motion to suppress in full.  *Id.*

After the district court denied the suppression motion, Washington pleaded guilty to two counts of the indictment. Under the terms of the plea agreement, he waived his right to appeal or collaterally attack his conviction but reserved the right to appeal the district court's denial of his suppression motion. The district court sentenced Washington to a total term of 151 months' imprisonment followed by five years of supervised release. This appeal followed.

## II. ANALYSIS

When reviewing the denial of a suppression motion, "we review the district court's findings of fact for clear error and its conclusions of law de novo." *United States v. Bateman*, 945 F.3d 997, 1004–05 (6th Cir. 2019) (quoting *United States v. Moorehead*, 912 F.3d 963, 966 (6th Cir. 2019)). A district court's denial of a suppression motion "will be affirmed on appeal if the district court's conclusion can be justified for any reason." *Id.* at 1005 (quoting *Moorehead*, 912 F.3d at 966).

### A. Washington's Arrest

The Fourth Amendment ensures the "right of the people to be secure in their persons . . . against unreasonable . . . seizures." U.S. Const. amend. IV. "[A] warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed." *Brooks v. Rothe*, 577 F.3d 701, 706 (6th Cir. 2009) (alteration in original) (quoting *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004)). "[P]robable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts[.]" *Illinois v. Gates*, 462 U.S. 213, 232 (1983). Because of this fluidity, the Supreme Court has described probable cause generally as "a flexible, common-sense standard." *Id*. at 239. The probable cause test for an arrest considers "whether there is a reasonable ground for belief of guilt specific to the suspect." *United States v. Baker*, 976 F.3d 636, 645 (6th Cir.

2020) (internal quotations and citation omitted). We ask "whether, at the time of the arrest, the facts and circumstances within the arresting officer's knowledge and of which [he] had reasonably trustworthy information were sufficient to warrant a prudent person to conclude that an individual either had committed or was committing an offense." *United States v. Torres-Ramos*, 536 F.3d 542, 555 (6th Cir. 2008) (original modification, internal quotations, and citation omitted).

At the time of Washington's arrest, officers had more than ample information to conclude that he intended to engage in criminal activity. Officers had reason to believe Washington was involved with a drug deal on June 4 after their interview with Belcher. Officers then corroborated Belcher's information by acquiring the motel's surveillance footage and Washington's driver's license information. When Belcher again solicited Washington for a pound of methamphetamine, the two agreed to meet at Room 202 of the Super 8 Motel to complete the transaction. With officers looking on, Washington arrived at the agreed-on location at the specified time operating the vehicle Belcher described. He then went directly to Room 202 and knocked on the door. Belcher's information—corroborated by the officers' independent investigation and surveillance—established probable cause to justify Washington's arrest. *See United States v. Strickland*, 144 F.3d 412, 417 (6th Cir. 1998) (holding that "the corroboration of a certain amount of information provided by an informant can be sufficient to establish probable cause to arrest and search a criminal suspect"). Accordingly, the district court properly denied his motion to suppress on this ground.

## B. Washington's Vehicle Search

In the context of a search, probable cause requires only "a fair probability that contraband or evidence of a crime will be found in a particular place." *Gates*, 462 U.S. at 238. We need only ask "whether a nexus exists between a crime and the place to be searched and whether information

in an affidavit is sufficiently timely to think that the sought-after evidence still remains at the identified location." *Baker*, 976 F.3d at 646 (internal quotations and citation omitted). Under the automobile exception to the warrant requirement, "police officers may conduct a warrantless search of a vehicle if they have probable cause to believe that the vehicle contains evidence of a crime." *United States v. Smith*, 510 F.3d 641, 647 (6th Cir. 2007) (internal quotations and citation omitted). "A positive indication by a properly-trained dog is sufficient to establish probable cause for the presence of a controlled substance." *United States v. Diaz*, 25 F.3d 392, 393–94 (6th Cir. 1994).

Here again, officers had probable cause to search Washington's vehicle. Officers knew Washington was coming to the motel in a black BMW with Indiana plates for the purpose of selling methamphetamine to Belcher. Officers observed the vehicle as it arrived, and they subsequently identified Washington as he exited the vehicle and walked to Room 202. When they found no drugs on Washington's person, the police dog on-site alerted to the presence of drugs in his vehicle. Under these circumstances, the officers had probable cause to search Washington's car. *See id.*

Still, Washington resists this conclusion, arguing the automobile exception is inapplicable when the driver is detained because the car is not readily mobile. This argument, however, is foreclosed by controlling precedent. As we have previously recognized, the Supreme Court has been clear that a "lesser expectation of privacy" applies to vehicles "[e]ven in cases where an automobile was not immediately mobile[.]" *Smith*, 510 F.3d at 647 (quoting *California v. Carney*, 471 U.S. 386, 391 (1985)). Because the dog sniff gave the officers probable cause to search Washington's vehicle, the automobile exception applies even though Washington's detention made it unlikely to move. *See Taylor v. City of Saginaw*, 922 F.3d 328, 334 (6th Cir. 2019) (citing *Smith*, 510 F.3d at 647); *see also United States v. Nigro*, 727 F.2d 100, 106 (6th Cir. 1984) (en

banc) ("The automobile exception has always depended on the inherent mobility of the vehicle to be searched, not on whether it could in fact be used immediately to effect a removal of evidence[.]").

Officers had probable cause to search Washington's vehicle. Accordingly, the district court properly denied his motion to suppress.

## C. Washington's Statement

The Fifth Amendment protects the privilege against compelled self-incrimination by excluding involuntary confessions from a defendant's trial. U.S. Const. amend. V; *see also Colorado v. Connelly*, 479 U.S. 157, 163 (1986). The government must show by a preponderance of the evidence that a defendant's confession was voluntary. *United States v. Mahon*, 190 F.3d 416, 422 (6th Cir. 1999). It is also the government's burden to establish that *Miranda* warnings were properly given and understood. *Miranda v. Arizona*, 384 U.S. 436, 444–45 (1966). To determine whether statements were involuntary or coerced, we consider the totality of the circumstances. *United States v. Montgomery*, 621 F.3d 568, 571 (6th Cir. 2010). We view the evidence in the light most favorable to the government. *United States v. Fowler*, 535 F.3d 408, 417 (6th Cir. 2008). The impact of a defendant's intoxication, like any other factor, is evaluated on a case-by-case basis. *Montgomery*, 621 F.3d at 572–73.

Washington argues his statements to officers were involuntarily given because he was under the influence of drugs during the interview. But simply being under the influence during an interview is not nearly enough to overcome a *Miranda* waiver. We have previously rejected claims that an intoxicated defendant's statements were involuntary when credible testimony established that the defendant was otherwise alert, coherent, and lucid during questioning. *See id.* at 574

(morphine); *see also United States v. Dunn*, 269 F. App'x 567, 573 (6th Cir. 2008) (Vicodin and marijuana). And here, Washington's case is no different.

During the suppression hearing, the interviewing officer testified that Washington was cooperative "for the most part[.]" (9/25/20 Suppression Hr'g Tr., R. 79, PageID 293.) The officer explained that Washington "was alert, answered [his] questions" and did not show any physical manifestations of inebriation, such as "falling down or any problems standing or using anything for balance[.]" (*Id.* at PageID 294.) Furthermore, the district court found the officer's testimony was supported by a recording of the interview. *Washington*, 2020 WL 7389745, at \*7. "Upon listening to the recorded interview," the district court wrote, "the Court believes that Washington appeared lucid throughout the interview with [officers]." *Id.* Viewing the evidence in the light most favorable to the government, as we must, there is more than sufficient evidence to support the district court's conclusion that Washington's statements were made voluntarily.

## III. CONCLUSION

The district court properly denied Washington's motion to suppress. We affirm.